564 A.2d 1289

**COMMONWEALTH of Pennsylvania**

v.

**Harold McNEIL, Appellant.**

Superior Court of Pennsylvania.

Submitted June 27, 1989.

Filed Oct. 6, 1989.

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before DEL SOLE, TAMILIA and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from a judgment of sentence. Appellant, Harold McNeil, was tried and found guilty by a jury of burglary and possessing an instrument of a crime, generally. Subsequent to the denial of his post-verdict motions, appellant was sentenced to a term of ten (10) to twenty (20) years on the burglary charge and a term of two and one-half (2–½) to five (5) years on the possession of an instrument of crime charge. Appellant then filed a petition for reconsideration of sentence. Upon consideration of this

petition, the court changed appellant's sentence to allow the period of incarceration on the weapons charge to run concurrently with the sentence imposed on the burglary charge. This timely appeal follows.

The facts of this case, as outlined by the lower court, are as follows:

On September 5, 1987, at about 9:40 P.M., Philadelphia police officer John Burke received a radio call of a burglary in progress at the rear of a house at 2505 West Sterner Street, in Philadelphia, Pennsylvania. Burke arrived on the scene and entered the back alley of the house within two minutes of getting the call. He saw [appellant], identified as Harold McNeil, with one leg inside the property and with a tire iron in his hand. Burke apprehended McNeil and placed him under arrest. He observed at the time pry marks or "jimmie" marks around the window consistent with its having been forced open.

Appellant presents four issues for our review. First, appellant argues that the lower court's comments to the venire denied him of his constitutional right to a fair trial and impartial jury.[1] Second, appellant states that the lower court erred by refusing to quash an information charging him with burglary. Third, appellant alleges that the evidence was insufficient to sustain his conviction for possession of an instrument of crime. Finally, appellant argues that his double jeopardy rights were violated when the lower court denied his demurrer to the possession of an instrument of crime charge. Because we find no merit to

---

**1.** While this argument was not included in appellant's original post-verdict motions or addressed in the lower court opinion, we do not deem it waived for the purpose of appellate review. "[A] defendant may be granted leave to file additional reasons for a new trial or in arrest of judgment but this is a matter of discretion with the trial court." *Commonwealth v. Pyett*, 372 Pa.Super. 291, 294, 539 A.2d 444, 445 (1988). *See* Pa.R.Crim.P., Rule 1123(a), 42 Pa. C.S.A. In the case *sub judice*, appellant proffered this argument in his supplemental post-verdict motions. Reviewing the post-trial motions hearing transcript, we find that the lower court addressed and rejected this contention on its merits. Thus, this issue is preserved for our review.

these allegations, we affirm the lower court's judgment of sentence.

▮ As previously noted, appellant first contends that the judge's comments to the venire denied him a fair trial and impartial jury. Specifically, appellant argues that the lower court's statements minimized the seriousness of the instant case and the importance of the jury's responsibilities. Appellant also argues that these comments improperly encouraged the jury to presuppose appellant's guilt and aligned the lower court with the prosecution in the eyes of the jurors. Appellant contests four lower court statements. First, appellant argues that lower court improperly commented on the appellate rights of convicted persons. Second, appellant states that the lower court improperly stated that many defendants in his courtroom were convicted. Third, appellant argues that the lower court judge improperly informed the jury of his former employment as a prosecutor. Finally, appellant states that the lower court improperly commented on how quickly the instant action would proceed as a bench trial as opposed to a jury trial.

Reviewing the province of judges, our supreme court has declared that a judge has a duty "to insure that his conduct is 'above reproach,' or minimally, is not prejudicial." *Commonwealth v. Hammer*, 508 Pa. 88, 96, 494 A.2d 1054, 1058 (1985) (citation omitted). Our review of the jury selection transcripts demonstrates that the conduct of the lower court in the case *sub judice* was not prejudicial to appellant. Pertinent excerpts of the judge's comments to the venire follow:

> The court: Thank you. Members of the panel, I use this occasion now to kill the clock. Have a little fun with you. Maybe rap a little. Tell you what is going on now. This is the time when lawyers do their thing. The piece of paper is going to be passed back and forth between Mr. Bookman and Mr. Means. They are going to write down strike or accept, strike or accept. They get seven peremptory challenges. Not eight. Seven. They get an unlimited number of challenges for cause. It's a very

exact science. All kinds of books have been written about it. I never understood it. I was prosecutor years ago. I was an original appointee here years ago with a man by the name of Richardson Dilworth and served ten years, then ten years in my own practice. I was always a maverick bucking some political party. I ran four times and the fifth time you made a mistake and you elected me. Then you retained me again some three or four years ago. But this is a job and if you ask me how they do it, I don't know. I used to flip a coin. I am sure Mr. Means and Mr. Bookman have a better technique than that.

．　　　．　　　．　　　．　　　．

Here is your chance to ask a judge a question. Don't ask me about the case because I don't know anything. If I did I would not tell you. But ask me anything that you see or hear on TV or radio or in the newspapers about the courts or about the system or criminal justice. And I learn from you an awful lot. Come on. You must be wondering something. You are stuck here today. You may as well—I have not taken an envelope in quite awhile as far as I know. Let's see how we can make out. Come on, somebody.

Juror: Are all judges as informal as you are?

The court: They think that I'm crazy. But I don't care. I just find that jurors when they go out to do their thing are so intense, do such a marvelous job, that anything that can relax them I think is preferable. I don't think that justice is going to by any means necessarily prevail in an overly ritualistic fashion. I never have buttoned my robe in 14 years. I wouldn't know how. And don't hold this against my other colleagues. They are very nice people. Thank you. But that's the way I am. Question? I am pretty much that way in everything. When I come to work I wear a jacket and cowboy hat.

Juror: What are your duties after four o'clock?

The court: Stick around today. Why—

The court crier: Seven tonight. I need a lunch break already.

The court: He gets paid for doing that, too. Why, frankly I have been a judge for I told you 14 years. I have a large number who have been convicted. And everyone who is convicted has the right to appeal. Everybody does. And the first appeal is to me. And so it's a very complicated process. All the notes of testimony have been transcribed. I get a presentence report, psychiatric report. The sentencing process, assuming I hear the argument and deny any motions, say that I don't see any basis for a new trial, I then go ahead and sentence. That could take a long, long time. Then there were perhaps arguments or parole violations. Also as a judge I perform more weddings than all the priests, deacons, and rabbis and all the judge[s] put together in Philadelphia. I do. I don't know why, but I do. And it takes a lot of time. I am involved in lots of other things, writing and so forth. But we like to keep our deferred matters that I set for the afternoon because a lot of people have to come together at one time and it's very difficult to—they may have to be in other courts, and rather than strip them from other courtrooms we save that to the end of the day. That could run late.

Juror: If you disagree with a jury's verdict are you allowed to overturn that?

The court: Our appellate courts intentionally make it difficult. They say I am not to substitute my judgment in a factual judgment in a factual issue for that of a jury. And for a judge to overturn a verdict of a jury, say, they convict him and notwithstanding the verdict I—it's almost—not that it's impossible, but almost impossible. The sanctity of the jury's decision is something that stands there. To say if there's error in the trial, that's something else. I have had all kinds of interesting things. But short of that our appellate courts very properly say you have an enormous burden, Judge Hal-

bert, to set aside that jury's decision. Enormous. I think that's right. As it should be. Question? Good Question. Juror: How many cases do you hear in a year?

The court: How many cases a year? Well, actually this case will be very short they tell me, very fast. I could get into a homicide where there is the death penalty aspect and jury selection I would bring you in one at a time. That could take not just days and weeks but months just in a jury selection. But on average, four, five a month jury cases. Unless you get into—and I tried, let's say, everything from murders, robberies, rapes, on down. But it's an average unless you get into a protracted case. The first eight years I was a judge I say as a judge without a jury, where he's the fact finder as well. He'll determine guilt or innocence and so forth. I did that. A case like this would probably take me or any other judge maybe ten minutes to half an hour at the most to try. The jury process is a cumbersome procedure. And other things can cause things to be protracted that we have no control over. Those who are selected for the jury, hold me to this: if time appears to be wasted and you come in and we don't get to work on time, I can't usually tell you why we are delayed. But you make me account for every minute when the case is over. I promise you I will. I can't usually tell you during the course of the trial. But at the end I'll account for every minute. I think you're entitled to know that. Questions?

Reviewing this unusual colloquy, it is also apparent that the lower court's comments did not reveal a minimization of the seriousness of the instant case or the jury's responsibilities. Instead, the judge attempted to explain the role of the court and its internal proceedings.[2] We do not find, there-

2. In conjunction with his argument concerning the judge's comments regarding prior employment as a prosecutor, appellant notes that the judge also told the venire that the courtroom "used to be the District Attorney's Office.... We only had 26 of us then. There are over 250 prosecutors now. That is back in the 50's." Appellant suggests that this statement prejudicially aligned the judge with the prosecution in the eyes of the venire. We disagree. Our review of the transcript reveals that this statement was only tendered by the judge to describe

fore, that the judge's comments, unrelated to the issues of the instant case, constituted prejudicial conduct. Thus, we reject appellant's contention that he was denied a fair trial and impartial jury.

■ Second, appellant argues that the court erred in refusing to quash the information charging him with burglary. The burglary information was deficient, appellant concludes, because it failed to specify an ulterior crime, i.e., the specific crime underlying the burglary. Appellant argues that this procedure is fundamentally unfair and deprived him of his right to be notified of the charges against him in accordance with the Sixth Amendment of the United States Constitution as well as Article 1, Section 9 of the Pennsylvania Constitution.[3] In contrast, the Commonwealth argues that it is not necessary for the burglary information to specify the ulterior crime. Both parties agree that the burglary information did not include an ulterior crime. For the reasons outlined below, we reject appellant's contentions.

While the Commonwealth proffers prior cases wherein we stated that a burglary information need not specify an ulterior crime,[4] appellant cites the Third Circuit Court of Appeals decision of *Government of Virgin Islands v. Pemberton*, 813 F.2d 626 (3rd Cir.1987) as controlling. In *Pemberton*, the Court of Appeals held that a Virgin Islands' burglary information was violative of the Sixth

the improvements made in the physical condition of the courtroom facility during his tenure as a judge. Thus, viewed in context, this comment did not constitute prejudicial conduct on the part of the lower court judge.

3. The Sixth Amendment of the United States Constitution provides, in relevant part:

In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation.

Article 1, Section 9 of the Pennsylvania Constitution provides, in relevant part:

In all criminal prosecutions the accused has a right to ... demand the nature and cause of the accusation against him....

4. *See Commonwealth v. Vazquez*, 328 Pa.Super. 86, 476 A.2d 466 (1984); *Commonwealth v. Franklin*, 306 Pa.Super. 422, 452 A.2d 797 (1982).

Amendment of the United States Constitution because it failed to contain an essential element of the offense to be charged. With regard to the precedential value of decisions of the Third Circuit Court of Appeals involving federal questions, the Pennsylvania Supreme Court declared in a previous case that while:

the Supreme Court of the United States is the ultimate arbiter, in view of the widespread confusion in this area of law and the failure of the Supreme Court to clarify it, the decision of the Third Circuit Court of Appeals is on this matter, for all practical purposes, the ultimate forum in Pennsylvania. If the Pennsylvania courts refuse to abide by its conclusions, then the individual to whom we deny relief need only to "walk across the street" to gain a different result. Such an unfortunate situation would cause disrespect for the law. It would also result in adding to the already burdensome problems of the Commonwealth's trial courts, which look to us for guidance. Finality of judgments would become illusory, disposition of litigation prolonged for years, the business of the courts unnecessarily clogged, and justice intolerably delayed and frequently denied

Consequently, in order to alleviate and correct a regrettable situation, the clear indication for this Court is to accept and follow the decision of the Third Circuit on this matter until some further word is spoken by the Supreme Court of the United States.

*Commonwealth v. Negri*, 419 Pa. 117, 122, 213 A.2d 670, 672 (1965). More recently, our supreme court has reiterated this approach, acknowledging that:

[w]hen the United States Court of Appeals for the Third Circuit has held certain practices or procedures to violate federal constitutional rights, its decision will be accepted and followed by the courts of this Commonwealth until the United States Supreme Court has spoken on the issue.

*Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 620 n. 5, 375 A.2d 1285, 1288 n. 5 (1977) (citations omitted). While *Pemberton* may be instructive, however, we need not

determine whether we are bound by this decision since our case is easily distinguishable from the Virgin Islands case. *See Commonwealth v. Johnson,* 507 Pa. 27, 36, 487 A.2d 1320, 1324 (1985) (wherein our supreme court declared that the *Johnson* case was distinguishable from a Third Circuit Court of Appeals decision due to the unusual facts of the third circuit case).

In *Pemberton,* the Government of the Virgin Islands appealed from an order of the District Court of the Virgin Islands, Appellate Division, which affirmed an order of the Territorial Court of the Virgin Islands. *Pemberton,* 813 F.2d at 627. In its order, the territorial court dismissed a burglary information against appellee Pemberton on the grounds that a delay in bringing him to trial violated his Sixth Amendment right to a speedy trial. *Id.* The Court of Appeals reversed this dismissal, however, finding that appellee Pemberton's right to a speedy trial was not violated. *Id.* at 627–30. But the court also found that the pertinent information was inadequate with regard to constitutional requirements. *Id.* at 630–33.

The burglary information in *Pemberton* charged appellant as follows:

> On or about the 28th day of November, 1983 in the Virgin Islands of the United States, Judicial Division of the United States, Judicial Division of St. Croix, ARTHUR PEMBERTON, did, *with intent to commit an offense therein,* breaks and enters a building, that being Marriot In Flight Services Office, located at the Alexander Hamilton Airport, namely by breaking of the lock of an outer iron security gate, and removing the door knob of said door, thereby gaining entry, all in violation of 14 V.I.C. § 444(1).

*Id.* at 630, n. 4. This information, like the document in the case *sub judice,* did not contain an ulterior crime. The crime of burglary in *Pemberton* was defined as follows:

> Whoever—

(1) *with intent to commit an offense therein,* breaks
and enters a dwelling house, building, or structure or any
part thereof;

... is guilty of burglary in the third degree....

14 V.I.C. § 444(1) (emphasis added).

In reviewing the sufficiency of the aforementioned infor-
mation, the *Pemberton* court, citing *Russell v. United
States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962),
announced that the Sixth Amendment of the United States
Constitution required the court to ascertain:

[F]irst, whether the indictment or information contains
the elements of the offense intended to be charged 'and
sufficiently apprises the defendant of what he must be
prepared to meet,' and, second, 'whether the record shows
with accuracy to what extent he may plead a former
acquittal or conviction' in the event of subsequent prose-
cution.

*Id.* at 631 (quoting *Russell v. United States,* 369 U.S. 749,
763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962)). Most
importantly, the court noted that an "information may set
forth the offense in the words of the statute itself only if
'those words of themselves fully, directly, and expressly,
without any uncertainty or ambiguity, set forth all the
elements necessary to constitute the offense intended to be
punished.' " *Id.* (citations omitted).

The *Pemberton* court determined that the information
charging appellant with breaking and entering a building
"with [the] intent to commit an offense therein" failed to
adequately set forth an essential element to the crime of
burglary. *Id.* at 632. The court explained that this essen-
tial element was the ulterior crime, i.e., the specific offense
underlying the burglary. *Id.* The burglary information
failed to articulate the offense that appellee allegedly in-
tended to commit upon his illegal entry. *Id.* at 631–32.
Without notice of this essential element of the crime, the
court reasoned, appellant would be "substantially limited in
the preparation of a defense." *Id.* at 632. The court in
*Pemberton* concluded, therefore, that the information failed

to meet the first inquiry mandated by *Russell* and must be deemed inadequate. *Id.*

Reviewing *Pemberton,* it appears that the pertinent defendant was charged solely with third degree burglary. Conversely, appellant in the case *sub judice* was initially charged with attempted theft and possessing an instrument of crime as well as burglary. We cannot state, therefore, that appellant was without notice of the ulterior crime that the Commonwealth sought to prove in conjunction with the burglary charge. As a result, the potential evil that *Pemberton* seeks to prevent, i.e., inadequate notice unfairly limiting a defendant's preparation of his or her defense, does not exist in the instant case. Therefore, we reject appellant's contention that the burglary information was constitutionally defective.[5]

 Third, appellant contends that the evidence proffered was insufficient to sustain his conviction for possession of an instrument of crime. Citing our decision in *Commonwealth v. Cavanaugh,* 278 Pa.Super. 542, 420 A.2d 674 (1980), appellant proclaims that a tire iron may not constitute an instrument of crime under the relevant section of the crime code. We disagree.

In the case *sub judice,* appellant was apprehended while illegally entering a home. In contrast, the appellant in *Cavanaugh* utilized a tire iron to commit an assault. Thus, while the tire iron utilized by the appellant in *Cavanaugh*

---

**5.** While we find *Pemberton* inapplicable to this case, we question the logic underlying the Court of Appeals decision. In a fact pattern such as that in the instant case, it would be difficult if not impossible to ascertain the ulterior crime in cases wherein the prosecution does not charge the suspect with an additional crime. For instance, in the case *sub judice* appellant was apprehended while illegally entering a residence, tire iron in hand. Since the police officer in this case reacted promptly and effectively to prevent further illegal activity, appellant could not fulfill his criminal intent. Yet, it is apparent to even a casual observer that such an individual has some criminal intention when illegally entering a residence. Under the *Pemberton* approach, however, the prosecution is forced to predict the offender's subjective criminal intent or abandon pursuing a burglary conviction due in spite of the effective crime prevention of the police department. We fail to see the logic in requiring the prosecution to engage in such prognostication.

did not constitute a criminal instrument under the pertinent statute, it is not axiomatic that a tire iron never constitutes a criminal instrument.

Our legislature has defined possessing instruments of crime in the following manner:

> (a) Criminal instruments generally.—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.
>
> . . . . .
>
> (c) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

"Instrument of crime."

(1) Anything specially made or specially adapted for criminal use; or

(2) Anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

18 Pa.C.S.A. § 907 (emphasis added).

Reviewing the statute, we find that the tire iron utilized in the instant case constitutes an instrument of crime as defined under subsection (2) of the aforementioned crime. We have previously noted that a tire iron is a common burglary tool. *See, e.g., Commonwealth v. Herman*, 227 Pa.Super 326, 323 A.2d 228 (1974) (wherein we noted that a tire iron and a large screwdriver are common burglary tools); *Commonwealth v. Dalahan*, 262 Pa.Super. 615, 396 A.2d 1340 (1979), (wherein we affirmed a conviction for attempted burglary where the appellant used a tire iron to pry open a luncheonette window). Thus, we also reject appellant's argument concerning this issue.

 Finally, appellant alleges that his double jeopardy rights were violated when the trial court denied his demurrer to the possession of an instrument of crime charge after initially granting it. Our review of the lower court transcript reveals, however, that the court never issued a ruling granting the demurrer. Instead, the court only stated that

it was "inclined to grant" the demurrer. The court reconsidered this "inclination" a mere five minutes later and denied the demurrer. In addition, our review of the relevant possession of instrument of crime information does not reveal any documentation of this allegation. Therefore, since appellant's demurrer was never granted, we find that his double jeopardy rights were not violated.

Accordingly, appellant's judgment of sentence is affirmed.

DEL SOLE, J., concurs in the result.