**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Francis VIDA, Appellant.**

Superior Court of Pennsylvania.

Argued March 11, 1998.

Filed July 30, 1998.

Peter Rosalsky, Philadelphia, for appellant.

Karen A. Brancheau, Asst. District Atty., Philadelphia, for Com., appellee.

Before TAMILIA, ORIE MELVIN and BECK, JJ.

PER CURIAM:

Appellant, Francis Vida, appeals from the Order of May 21, 1997 which denied his writ of certiorari to the Common Pleas Court. Following his Municipal Court convictions of criminal mischief,[1] and possessing instruments of crime,[2] he was sentenced to one (1) year probation, two hundred (200) hours of community service and costs. On appeal, we address, *inter alia,* a recent amendment to the criminal statute of Possessing an Instrument of Crime (PIC). 18 Pa.C.S.A. § 907.

Police observed appellant use a white paint stick to paint the letters "C–A–D–E" on a public lamp pole on the street in Philadelphia. He now claims he cannot be guilty of criminal mischief because the Commonwealth did not prove the instrument he used to write his graffiti, the paint stick, "left behind an indelible ink, paint or other type of stain." (Appellant's brief at 8.) Appellant insists criminal mischief/graffiti is not established unless the marking device used contained an indelible marking product.

In support of his claim, appellant directs our attention to the statute, which provides in pertinent part:

A person is guilty of criminal mischief if he: intentionally defaces or otherwise damages tangible public property or tangible property of another with an aerosol spray-paint can, broad-tipped indelible marker or similar marking device.

18 Pa.C.S.A. § 3304(a), **Offenses defined,** (4). He claims that the "indelibility element" is mandatory because: 1) the statute requires the actor deface or damage property, which by its very nature means permanent damage; and 2) the statute requires the defacing or damage be accomplished by a spray-paint can, an indelible marker or "similar" marking device, which by necessity requires that all marking devices be indelible.

Upon a plain reading of the statute, we reject appellant's claim. Defacing or damaging does not by definition mean permanent damage. Nor does the legislature's use of the term indelible with respect to one type of marking device mean all marking devices must also be indelible. We observe the legislature did not use the term indelible in describing spray-paint cans. As the law does not require either spray-paint cans or "similar marking devices" be of an indelible

1. 18 Pa.C.S.A. § 3304.

2. *Id.,* § 907.

type, we will not, and in fact, cannot, add such a requirement to the statute. *Commonwealth v. Hagan*, 539 Pa. 609, 654 A.2d 541 (1995) (plain words of a statute cannot be disregarded where the language is free and clear from ambiguity); 1 Pa.C.S.A. § 1921(b), **Legislative intent controls.**

Appellant's second claim also involves statutory interpretation, this time with respect to the PIC statute which provides:

"A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). The statute explicitly defines instrument of crime as "anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." § 907(d).

Appellant argues he cannot be guilty of PIC because: a) he could not have possessed the paint stick "with the intent to employ it criminally" since it was not established that it was an indelible marker; b) writing on a pole with a paint stick not proven to be indelible does not constitute the crime of criminal mischief and therefore there was no "use for criminal purposes"; and c) a paint stick is not an instrument of crime.

Because the Commonwealth was not required to prove the paint stick held indelible paint, appellant cannot be granted relief on points (a) and (b). With respect to point (c), appellant asserts that although the paint stick in this instance appears to satisfy the statutory definition of an instrument of crime, such a result is unreasonable and absurd and cannot be sustained.

Until very recently, the statutory definition of an instrument of crime was "anything *commonly* used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it might have." (Emphasis added.) Our courts were faced with many challenges by defendants who argued the instrument with which he or she committed a crime did not satisfy the statute. In most instances, the cases turned on the term "commonly." Accordingly, courts looked to both the nature of the item used and the type of crime committed to determine whether the item's use in the particular instance was "common." As a result, a screwdriver in a burglary case constituted an instrument of crime, *Commonwealth v. Lewis*, 319 Pa.Super. 33, 465 A.2d 1038 (1983), whereas the same instrument in a murder case did not. *Commonwealth v. Eddowes*, 397 Pa.Super. 551, 580 A.2d 769 (1990), *appeal denied*, 529 Pa. 631, 600 A.2d 951 (1991). Similarly, a tire iron used to accomplish a burglary satisfied the statutory definition, *Commonwealth v. McNeil*, 388 Pa.Super. 108, 564 A.2d 1289 (1989), *appeal denied*, 525 Pa. 617, 577 A.2d 889 (1990), but use of a tire iron in the course of an aggravated assault did not. *Commonwealth v. Cavanaugh*, 278 Pa.Super. 542, 420 A.2d 674 (1980).

Essentially, items without a "common link" to the crime for which they were used could not be deemed instruments of crime. *See, e.g., Commonwealth v. Durrant*, 501 Pa. 147, 460 A.2d 732 (1983) (pool cue used to beat victim to death is not an instrument of crime); *Commonwealth v. Myers*, 376 Pa.Super. 41, 545 A.2d 309 (1988) (scissors not an instrument of crime when used in rape and kidnapping), *appeal denied*, 522 Pa. 588, 561 A.2d 741 (1989); *Commonwealth v. Aycock*, 323 Pa.Super. 62, 470 A.2d 130 (1983) (PIC conviction reversed where aggravated assault committed with a piece of steel); *Commonwealth v. Rodriquez*, 316 Pa.Super. 203, 462 A.2d 1310 (1983) (razor blade not an instrument of crime in murder case).

In 1992, this court affirmed a PIC conviction when it found that a baseball bat, used in the brutal beating death of a man on the street in Philadelphia, met the definition of an instrument of crime. *Commonwealth v. Ngow*, 422 Pa.Super. 578, 619 A.2d 1374 (1992). We held that the trial court correctly relied on statistical evidence establishing that the use of baseball bats as weapons of choice in Philadelphia had risen significantly in recent years. *Id.* 619 A.2d at 1377. Our Supreme Court reversed, stating that the trial court's reliance on "anecdotes and newspaper articles" was "mere conjecture" and the evidence produced at trial was insufficient to establish that baseball bats were "commonly used" for criminal purposes. *Commonwealth*

v. *Ngow*, 539 Pa. 294, 652 A.2d 305, 306 (1995).

In a concurring opinion in *Ngow*, one of the justices agreed with his colleagues that reversal was required, but suggested that the problem posed by the case be addressed by the legislature. He recommended that the legislature eliminate the word "commonly" in the statute and, in so doing, "effectuate the original intent of the statute defining criminal instruments: to establish a separate and distinct crime for any person who possesses and uses ordinary items for criminal purposes under circumstances not manifestly appropriate for lawful uses that the item may have." *Id.* at 297–98, 652 A.2d at 307.

Less than six months after the Supreme Court decided *Ngow*, the legislature made a single revision to the PIC statute; it deleted the word "commonly" from the definition of an instrument of crime.

Appellant argues if we look only to the plain language of the statute, it is conceivable numerous items, not heretofore considered instruments of crime, will come within the definition. Among other things, appellant mentions the forger's pen, the cocaine user's straw and the intoxicated driver's automobile as all falling within the "new" definition of an instrument of crime. Such a result, appellant insists, is absurd, unduly harsh and cannot be the intent of the legislature.

We in the judiciary, however, are not permitted to delve into issues of legislative intent unless, by necessity, we must do so. *Commonwealth v. Heberling*, 451 Pa.Super. 119, 678 A.2d 794, 795 (1996) ("When the words of a statute are clear and unambiguous, the court cannot disregard them under the pretext of pursuing the spirit of the statute"); 1 Pa.C.S.A. §§ 1903, **Words and phrases**, (a), 1921. It is only when a statute is unclear that we may embark upon the task of ascertaining the intent of the legislature by reviewing the law beyond its words. *Grom v. Burgoon*, 448 Pa.Super. 616, 672 A.2d 823 (1996).

Appellant relies on a different rule of statutory construction to gain the relief he seeks. Where an absurd and harsh result is reached when applying the plain language of a statute, appellant reminds us, we are permitted to "look beyond the strict letter of the law to interpret a statute according to its reason and spirit and accomplish the object intended by the legislature." *Secretary of Revenue v. John's Vending Corp.*, 453 Pa. 488, 494, 309 A.2d 358, 362 (1973); 1 Pa.C.S.A. § 1922, **Presumptions in ascertaining legislative intent**, (1). Appellant argues that if we look beyond the strict letter of the amended statute, we can glean a logical construction that does not work unreasonable and absurd results.

The logical interpretation of the amended statute, according to appellant, is to define the phrase "under circumstances not manifestly appropriate for lawful uses it may have" as requiring that the item be possessed or used in a manner wholly different than that inherent in its lawful possession/use." (Appellant's brief at 20.) If we employ such a construction, appellant explains, the graffiti artist is not guilty of PIC because he has merely painted with a paint stick (albeit on public property); the forger is not guilty of PIC since he has merely written with a pen (although his writing was fraudulent); the cocaine user is not guilty of PIC since he has only ingested a substance with a straw (despite the fact that the substance is illegal and he has ingested it into his nose, not his mouth); and the drunk driver's car is not an instrument of crime since it was used for its intended purpose: driving (though while under the influence of alcohol).

The problem with appellant's alternative construction is that while protecting the persons mentioned above from a PIC conviction, it likewise protects the burglar with a pry bar and screwdriver. After all, a burglar uses his tools in an inherently proper manner, that is, removing screws from a doorknob (of a residence not his own) or prying open a window (of an unsuspecting neighbor). We find it difficult, if not impossible, to interpret the statute this way. Taking burglary tools outside the reach of PIC is itself an absurd result and simply would not "accomplish the object intended by the legislature." *John's Vending Corp.*, *supra* at 494, 309 A.2d at 362.

■ Because the language of the statute is so clear on its face, we will not look beyond it to interpret what appellant insists is the "true intent" of the legislature. In any event, the alternative interpretation proffered by appellant is illogical and thus he is not entitled to relief.[3]

Order affirmed.

Concurring Statement by BECK, Judge.

BECK, Judge, concurring:

At first blush, I find appellant's argument compelling. Could the telephone become an instrument of crime if used by an individual to harass another? Is a computer an instrument of crime if used to facilitate fraud? Perhaps a megaphone is an instrument of crime if it is used to incite a riot. These possibilities, and those raised by appellant, make me hesitate to embrace such a broad interpretation of the PIC statute. However, I agree with my colleagues that we, the judiciary, are simply not at liberty to do anything else.

I believe that the amended statute is onerous and ill-conceived, but recognize that the task of fashioning a law that punishes the offender who wields a baseball bat, but spares the graffiti artist, is one that can be accomplished only by the legislature. While I concede our inability to act in this instance, I encourage the legislature to reconsider the amended PIC statute. Already this court has seen an increase in the Commonwealth's use of the "new law." PIC charges have been instituted not only against appellant, but also against defendants charged with drunk driving.

I urge the legislature to reconsider the amended statute to determine whether it intended such an expanded application. I find it interesting that in encouraging his colleagues to delete the term "commonly" from the statute, Senator Stewart Greenleaf made specific reference to the *Ngow* case. Noting the increased use of baseball bats in lieu of firearms, the senator stated: "I think it is important for us to get tough with *violent criminals,* and this legislation would do that." *S.B. 729, Act No. 1995–27, Comments of Senator Greenleaf (March 1995) (emphasis supplied).*

In addition to the baseball bat-wielding defendants in *Ngow,* it is reasonable to conclude that the senator had in mind the criminal who beat his victim to death with a pool cue, *Commonwealth v. Durrant,* 501 Pa. 147, 460 A.2d 732 (1983), or the one who committed murder using a razor blade. *Commonwealth v. Rodriquez,* 316 Pa.Super. 203, 462 A.2d 1310 (1983). However, the legislature should consider whether, in amending the statute, it intended to include individuals such as appellant in the group of "violent criminals" with whom it wanted to "get tough."

I believe the broad reach of the statute is not only onerous, but unnecessary. In cases such as those raised by the majority, i.e.,

---

3. In her Concurring Statement, Judge Beck suggests the legislature took a course too broad in defining an instrument of crime. We disagree with Judge Beck's suggestion. We are in a time when conditions and technology exceed our capacity to deal with the ingenuity of criminals, and a broader definition of criminal activity, in some cases, is necessary to adequately deal with evolutionary criminal behavior. The appellant mentions what appear to be absurd results from the broad definition of instrument of crime. While Senator Greenleaf, an author of the amendment, spoke of getting tough with violent crime, this should not be construed to limit its application to direct and assaultive behavior and to exclude more benign types of crime. Using computers for fraud may not be violence per se, but can be devastating. Using a computer to shut down airline control systems or to interrupt armed forces defense systems could result in catastrophic disasters and multiple deaths. Like-

wise, interrupting computer regulation of train switchings or utility distribution grids could have comparable consequences. Similarly, on the internet, new forms of criminal activity involving child pornography and pedophilia, assumed and fraudulent identification, sham billings and invasion of privacy are occurring at a rate faster than legislators can effectively devise solutions at both the national and state levels. Admittedly, specific and detailed legislation is necessary to deal with these crimes, but the law frequently has resorted to broad non-specific legislation to prevent commission with impunity until a solution is found. If we had limited construction of the Constitution to the conditions and problems to which it originally applied, our democracy would not have survived. The elimination of the term "commonly" was necessary and to further limit the definition of instrument of crime would remove a necessary deterrent to criminal activity.

where the conduct of the defendant causes "catastrophic disasters and multiple deaths," the addition of a PIC charge to the list of serious crimes such a defendant faces will be so insignificant as to render it meaningless. In circumstances such as those raised by this case, i.e., a single incident of graffiti, the addition of a PIC charge (and the potential for increased punishment will be far too significant, making it excessive.[1]

I do not believe that our lawmakers "resorted to [the] broad, non-specific legislation" of the current PIC statute in order to deal with sophisticated, technical crime schemes, nor that they sought to address issues of internet pornography and national security; they merely wished to make a baseball bat, when used as a murder weapon, an instrument of crime. Because they have done significantly more than that, I recommend that they reexamine the law.

---

1. A conviction for graffiti exposes an individual to a maximum punishment of one year in prison, but only if the damage caused by the graffiti exceeds $150.00. Otherwise, the individual has committed a summary offense and is subject to incarceration for a maximum period of ninety (90) days. 18 Pa.C.S.A. §§ 1104(3); 1105; 3304(b). A PIC conviction exposes an individual to a maximum punishment of five years in prison. 18 Pa.C.S.A §§ 907; 1104(1).