J-S46044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KENYA HERRING, | : | |
| | : | |
| Appellant | : | No. 1000 EDA 2014 |

Appeal from the Judgment of Sentence entered on March 6, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No. CP-51-CR-0006660-2013

BEFORE:  MUNDY, OLSON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED AUGUST 07, 2015**

Kenya Herring ("Herring") appeals from the judgment of sentence entered following her conviction of aggravated assault of a police officer, possessing an instrument of crime ("PIC"), simple assault, recklessly endangering another person ("REAP"), and public drunkenness.[1]  We reverse Herring's conviction of PIC, and vacate her sentence as to that conviction. We affirm Herring's judgment of sentence as to her remaining convictions.

In its Opinion, the trial court described the facts underlying the instant appeal as follows:

> Police Officer David Tamamato ["Officer Tamamato"] was on duty in full uniform with his partner, Police Officer Erick Ruck ["Officer Ruck",] on March 16, 2013, at 11:30 p.m., on the 5600 block of North Broad Street in Philadelphia, PA.  On that date and time, the officers were out of their patrol car conducting a pedestrian investigation of a male[,] who was urinating on the

---

[1] 18 Pa.C.S.A. §§ 2702, 907, 2701, 2705, 5305.

highway. Officer Tamamato was covering his partner[, Officer] Ruck[,] as he dealt with the male pedestrian. [Herring] was walking along the sidewalk when she approached Officer Tamamato on his right side with two cups of coffee in her hand. Herring stopped and asked Officer Tamamato if the beer store was open. The Officer replied he didn't know, and directed [Herring] across the street to the store's location. [Herring] inquired a second time and attempted to walk between the two police officers. Officer Tamamato instructed her to walk around the investigation—extending his hand out to prevent [Herring] from coming between them and the suspect.

[] Officer Tamamato testified [that Herring] responded, "I can walk anywhere I want, bitch," and threw both cups of coffee directly in his face, hitting his right cheek and right eye. The coffee was hot and [Officer Tamamato] felt burning when it hit his skin. He [later] saw redness around his eye area. [Officer Tamamato] observed [that Herring] had a strong odor of alcohol on her breath and slurred speech. Officer Tamamato believed [Herring] to be under the influence of alcohol[,] and placed [Herring] in custody.

Officer Tamamato was transported to Albert Einstein Medical Center for treatment[,] where he received a flush for his eye. There was a redness to the officer's face and cheek.

Trial Court Opinion, 2/4/15, at 1-2.

Following a bench trial, the trial court convicted Herring of the above-described charges. Thereafter, the trial court sentenced Herring to six to twenty-three months in county jail for her conviction of aggravated assault. For her convictions of PIC, simple assault and REAP, the trial court imposed concurrent probation terms for a maximum period of three years. The trial court imposed no further sentence for Herring's conviction of public drunkenness. Herring subsequently filed the instant timely appeal, followed

by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

Herring now presents the following claims for our review:

1. Was not the evidence insufficient to prove aggravated assault[,] as there was no intent to cause bodily injury?

2. Was not the evidence insufficient to prove [PIC,] as coffee does not meet the definition of an instrument of crime?

3. Was not the evidence insufficient to prove [REAP,] as there was no actual risk of serious bodily injury or death?

Brief for Appellant at 2.

Herring first challenges the sufficiency of the evidence underlying her conviction of aggravated assault. *Id.* at 7. Herring asserts that Officer Tamamato suffered no bodily injury, received no treatment, and missed no time at work. *Id.* Herring argues that "[t]his is not 'bodily injury' within [the] meaning of [the] aggravated assault of police officer statute." *Id.* at 7-8. Further, Herring argues, the evidence fails to establish that it was her "conscious object" to cause bodily harm to Officer Tamamato. *Id.* at 9. According to Herring, "[s]he was drunk and acted in a puerile fit of pique upon being thwarted in the exercise of 'her rights.'" *Id.* at 9-10.

As this Court has opined,

our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.

- 3 -

> Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Stays*, 70 A.3d 1256, 1266 (Pa. Super. 2013) (internal quotation marks and citations omitted). The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003). "We may not substitute our own judgment for the [fact finder's], as it is the fact finder's province to weigh the evidence, determine the credibility of witnesses, and believe all, part, or none of the evidence submitted." *Commonwealth v. Cooper*, 941 A.2d 655, 662 (Pa. 2007).

A person is guilty of aggravated assault of a police officer if she "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty."[2] 18 Pa.C.S.A. § 2702(a)(3). The Crimes Code defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. A person acts intentionally with respect to a material element of an offense if "it is his

---

[2] A police officer is one of the persons enumerated in subsection (c).

- 4 -

conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S.A. § 302(b)(1)(i).

"[I]n a prosecution for aggravated assault on a police officer[,] the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an attempt to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." ***Commonwealth v. Rahman***, 75 A.3d 497, 501 (Pa. Super. 2013) (internal quotation marks and citation omitted). An "attempt" exists when "the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetrating ... bodily injury upon another." ***Commonwealth v. Stevenson***, 894 A.2d 759, 774 (Pa. Super. 2006) (citation omitted).

At trial, Officer Tamamato testified that on March, 16, 2013, at 11:30 p.m., in the 5600 block of North Broad Street in Philadelphia, he and his partner stopped a pedestrian for urinating on the street. N.T., 12/11/13, at 17. Officer Tamamato stood behind his partner, while they had the pedestrian up against a wall. ***Id.*** According to Officer Tamamato, Herring approached the two of them, stopping to ask if the beer store was still open. ***Id.*** at 19. Officer Tamamato described what next transpired as follows:

> Q. [The Commonwealth]: ... [W]hat did you say in response to her asking if the beer store was open?

A. [Officer Tamamato]: I stated I'm not sure what time the beer store closes. I said you can go across the street and see if they're still open. I can't really interact. I'm in the middle of covering my partner here.

Q. And what did she do?

A. At that time[,] she asked me again do you know what time the beer store closes, I don't know. I said I really can't interact because I'm trying to keep an eye on my partner to see if he's okay. At that time I said if you're going to walk, can you please walk in the direction of where the beer store is. Don't walk between me and my partner.

Q. Was she no longer stationary in speaking to you?

A. At first she was[,] then after I told her [if] she wouldn't mind going the other way or going behind but then she just stated she wanted to walk in between me and my partner and at that time I said no, you can't.

…

Q. And did she comply and walk behind you or walk in another direction?

A. She did not.

Q. What did she do?

A. She attempted to walk in between me and my partner again. I had my hand out and I said you can't walk through. At that time she made a comment stating I can do whatever I want[,] and then that's when she threw the two cups of coffee at my face.

…

Q. And where was she standing at the time that she threw the coffee?

A. Within about a foot.

Q. And was she still to your right or was she now in front of you?

A. She was still to my right.

Q. And what did she say prior to throwing the coffee?

A. I believe she said I can walk anywhere I want, bitch.

*Id.* at 19-22.

In addition, Officer Tamamato testified that the coffee hit his right cheek and right eye. *Id.* at 22. According to Officer Tamamato, the coffee "was hot enough for me to notice." *Id.* Further, Officer Tamamato stated that the coffee "hurt" when it first touched his skin. *Id.* Officer Tamamato identified a photograph of himself, taken after the incident, which depicted redness around his eye and earlobe area. *Id.* at 23-24. After the incident, Officer Tamamato testified, a nurse at Albert Einstein Medical Center "gave me some flush for my eye." *Id.* at 27. Officer Tamamato received no further treatment for his cheek area. *Id.* at 28.

Our review discloses that the evidence that Herring threw hot coffee towards the face and eyes of Officer Tamamato was sufficient to establish that Herring "intentionally act[ed] in a manner which constitute[d] a substantial or significant step toward perpetrating ... bodily injury upon another." *Stevenson*, 894 A.2d at 774. Further, Herring's act of throwing the hot coffee towards the eyes of Officer Tamamato was sufficient to establish that it was her "conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S.A. § 302(b)(1)(i). Because the

evidence is sufficient to sustain Herring's conviction of aggravated assault, we cannot grant her relief on this claim.

Herring next claims that the evidence is insufficient to sustain her conviction of PIC. Brief for Appellant at 10. Specifically, Herring argues that the coffee at issue does not meet the definition of an "instrument of crime." *Id.* According to Herring, the coffee "was not specially made or adapted for criminal use in any way. It was not possessed under circumstances not manifestly appropriate for lawful uses it may have." *Id.* at 11. Upon careful review of the record, we agree.

A person commits the crime of PIC, a misdemeanor of the first degree, "if [s]he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). Section 907 defines an "instrument of crime" as any of the following:

> (1) Anything specially made or specially adapted for criminal use.
>
> (2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

18 Pa.C.S.A. § 907(d).

Our review of the record discloses that the Commonwealth presented no evidence that the coffee, as used by Herring, was "specially made or specially adapted for criminal use." *See id.* While Herring ultimately may have used the coffee cup to facilitate a crime, the record discloses no evidence that she possessed the coffee "under circumstances not manifestly

appropriate for lawful uses it may have." ***See id.; see also***
***Commonwealth v. Williams***, 808 A.2d 213, 215 (Pa. Super. 2002)
(holding that the mere use of an item to facilitate a crime does not
transform the item into an instrument of crime for purposes of the PIC
statute); ***cf. Commonwealth v. Vida***, 715 A.2d 1180, 1183-84 (Pa. Super.
1998) (concluding that a paint stick, used by the defendant to paint graffiti
on a lamp pole, was an "instrument of crime").  As such, the evidence is
insufficient to sustain Herring's conviction of PIC.  Accordingly, we vacate
Herring's judgment of sentence for PIC.

Finally, Herring challenges the sufficiency of the evidence underlying
her conviction of REAP.  Brief for Appellant at 13.  Specifically, Herring
claims that there was no actual risk of serious bodily injury or death.  ***Id.***
Herring argues that "[t]he act of throwing coffee, evidently not scalding hot
coffee since the lack of injury is inconsistent with the coffee being scalding
hot, does not present a substantial risk of death or serious, permanent
disfigurement, or protracted loss or impairment of any bodily member or
organ."  ***Id.***

A person commits the crime of REAP "if [s]he recklessly engages in
conduct which places or may place another person in danger of death or
serious bodily injury."  18 Pa.C.S.A. § 2705.  "[I]n order to make out a
*prima facie* case for REAP, the Commonwealth need only establish that the
defendant's conduct placed or may have placed another in danger of serious

bodily injury or death." ***Commonwealth v. Black***, 108 A.3d 70, 78 (Pa. Super. 2015) (citation and emphasis omitted).

> [REAP] is a crime directed against reckless conduct entailing a serious risk to life or limb out of proportion to any utility the conduct might have." ***Commonwealth v. Rivera***, 349 Pa. Super. 303, 503 A.2d 11 (Pa. Super. 1985) (*en banc*). … A person acts in a reckless manner when [s]he consciously disregards a substantial and unjustifiable risk. ***See*** [***id.***] § 302(b)(3).
>
> In contrast, a person acts in merely a negligent manner when he should have known that his actions created a substantial and unjustifiable risk. ***See*** [***id.***] § 302(b)(4). "Recklessness is distinguishable from negligence on the basis that recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious inadvertence." ***Tayar v. Camelback Ski Corp., Inc.***, 616 Pa. 385, 402, 47 A.3d 1190, 1200 (2012).

***Commonwealth v. Vogelsong***, 90 A.3d 717, 719 (Pa. Super. 2014). "It is not [the defendant herself] that must be [shown] to have the present ability to cause death or serious bodily injury to another, it is [the defendant's] actions." ***Id.*** at 721. Our law defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

> To sustain a conviction under section 2705, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. ***In re Maloney***, 431 Pa. Super. 321, 636 A.2d 671, 674 (Pa.Super. 1994). Danger, not merely the apprehension of danger, must be created. ***Id.*** The *mens rea* for recklessly endangering another person is "a conscious disregard of a known risk of death or great bodily harm to another person." ***Commonwealth v.***

> *Peer*, 454 Pa. Super. 109, 684 A.2d 1077, 1080 (Pa.Super. 1996)….

*Commonwealth v. Martuscelli*, 54 A.3d 940, 949 (Pa. Super. 2012).

This Court has opined that "[b]randishing a loaded firearm during the commission of a crime provides a sufficient basis on which a fact-finder may conclude that a defendant proceeded with conscious disregard for the safety of other, and that he had the present ability to inflict great bodily harm or death." *Commonwealth v. Hopkins*, 747 A.2d 910, 916 (Pa. Super. 2000). Similarly, allowing a horse to roam freely on a highway has been deemed sufficient to sustain a conviction for REAP. *Vogelsong*, 90 A.3d at 721.

Keeping in mind our standard of review, we conclude that the evidence is sufficient to sustain Herring's conviction of REAP. The evidence reflects that Herring threw hot coffee into Officer Tamamato's face, and walked between Officer Tamamato and his partner during an investigation where the officers had a suspect against a wall. N.T., 12/11/13, at 21. We conclude that this evidence is sufficient to establish that Herring consciously disregarded a known risk of death or great bodily harm to Officer Tamamato and his partner by interfering with the officers. As the trial court observed in its Opinion, "[Herring's] actions put the police officers and public at risk." Trial Court Opinion, 2/4/15, at 6. Accordingly, we cannot grant Herring relief on this claim.

Judgment of sentence affirmed in part and vacated in part consistent with this Memorandum.[3]  Superior Court jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2015

---

[3] Our resolution does not affect the trial court's sentencing scheme.