**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:   PENNSYLVANIA
:
v.                         :
:
:
:
KURT D. STOVER            :
:
            Appellant       :   No. 1284 MDA 2019

Appeal from the Judgment of Sentence Entered July 31, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-SA-0000094-2019

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:           **FILED MAY 21, 2020**

Appellant, Kurt D. Stover, appeals *pro se* from the judgment of sentence entered in the Court of Common Pleas of York County following his conviction at a bench trial on the summary offense of criminal mischief (damage to property), 18 Pa.C.S.A. § 3304(a)(5). After a careful review, we affirm.

The relevant facts and procedural history are as follows: Appellant was cited for the summary offense of criminal mischief, and the magisterial district justice found him guilty of the offense. Appellant filed a timely appeal to the trial court for a trial *de novo*, which was held on July 31, 2019. At the trial, the Commonwealth presented the testimony of Joni Kahn while Appellant

_____

[*] Former Justice specially assigned to the Superior Court.

presented the testimony of Yonaton Reuvenny. Appellant also testified in his own defense.

At the trial, Joni Kahn testified she lived on Pineview Drive in York, Pennsylvania, and she had a six feet high privacy fence around the perimeter of her property. N.T., 7/31/19, at 22. Ms. Kahn testified that, prior to October 26, 2018, there was no damage to the fence; however, the next day, she "noticed that the fence, the vinyl panels, were pulled apart at the point of impact at two spots." *Id.*

Ms. Kahn clarified that, on October 26, 2018, she was sitting in her sunroom when she "heard a loud crash and…voices screaming" in the "general vicinity of [her] yard[.]" *Id.* at 23. Ms. Kahn walked out onto her deck, and she observed one of her neighbors, Tim Arnold, talking very loudly to Appellant. *Id.* She heard Mr. Arnold state to Appellant that Ms. Kahn "was a pedophile[,]" and she had "gotten the Harrisons thrown out of their house[,]…they're in jail[,] and [Ms. Kahn] should be in jail instead of them." *Id.* at 23-24.

Ms. Kahn testified that Appellant was near her fence because he was cleaning up the trash left behind at the adjoining property where the Harrisons had lived. *Id.* at 24. She noted the property "had gone to [a] Sheriff sale, so the realtor had hired someone to clean up the property." *Id.*

Ms. Kahn testified that, on October 27, 2018, she inspected the fence, and she noticed the fence had been damaged in an area where the fence

- 2 -

divided her property and the adjoining foreclosed Harrison property where Appellant had been working. *Id.* at 24-25. Ms. Kahn took photographs of the fence and received an estimate of $150.00 to repair the fence. *Id.* at 25. Ms. Kahn testified she did not give anyone permission to damage the fence or pull apart the pieces. *Id.* at 26.

Ms. Kahn noted that she had installed a stationary surveillance camera on the fence, which captured the relevant events occurring on October 26, 2018.[1] *Id.* at 27. As the video footage from the surveillance camera was played in court,[2] Ms. Kahn identified Appellant working in the yard where the Harrisons used to live, and, more specifically, she pointed to a spot in the video where Appellant threw a trash can into her fence. *Id.* at 31-32, 34-35. Ms. Kahn testified the "point of impact was right below where the camera was situated, which is where the damage [to the fence occurred]." *Id.* at 32. Ms. Kahn testified the realtor who was attempting to sell the foreclosed Harrison property gave Ms. Kahn permission to put the surveillance camera on the fence. *Id.* at 36.

Ms. Kahn testified that, at the hearing before the magisterial district justice, Appellant "admitted to hitting the fence." *Id.* at 33. She noted

---

[1] During the hearing, the prosecutor noted the surveillance camera captured only actions and "no audio transmissions or recordings of private audio conversations[.]" *Id.* at 41.

[2] The disc containing the video footage from the surveillance camera was included in the certified record to this Court.

Appellant testified at the hearing that he fell into the fence because "his knee gave out, but he couldn't explain why [a] trash can hit the fence." *Id.*

Yonaton Reuvenny testified Appellant was a "subcontractor for [him] for a period of time[,]" and he did various types of work, including "trashing out foreclosed homes." *Id.* at 45. Mr. Reuvenny indicated Appellant was at the foreclosed property where the Harrisons used to live on October 26, 2018, because he was doing a clean-up job for him. *Id.* Mr. Reuvenny indicated he was not present at the subject property on October 26, 2018. *Id.* at 48.

Mr. Reuvenny admitted Appellant once told him that he suffered from "severe PTSD and major depressive disorder[.]" *Id.* at 46. After the instant "fence incident," Appellant told Mr. Reuvenny that he did not want to be filmed or photographed in connection with his work. *Id.*

Appellant testified that, the day before the incident involving the fence, he noticed the surveillance camera on the fence, and he asked Mr. Reuvenny to not send him back to the property. *Id.* at 50. Mr. Reuvenny informed Appellant that he had no one else who could perform the clean-up job, so Appellant went back to the property to finish the job. *Id.* Appellant noted "that's when I met the man in the video that you could see, telling me all kinds of awful things about what happened with [Ms. Kahn] and her last neighbor[, the Harrisons]." *Id.*

Appellant testified that, after the conversation, he "went about" his work, but he felt the surveillance camera on the fence "was completely illegal."

*Id.* at 50-51. He testified that, as he "grabbed a hold of [a] trash can, [he] went to…pull it, it was full, [his] knee buckled and [he] fell and hit [his] head on [the] fence[.]" *Id.* at 51-52. Appellant testified he has a "messed up right knee [with] a torn ACL meniscus[.]" *Id.* at 51.

Appellant admitted he was "confused and upset" about being filmed, and he "didn't feel like it was fair or legal to be filming [him]." *Id.* at 52. He noted Ms. Kahn's neighbor told him that Ms. Kahn had used video footage from the surveillance camera to "get the last people" who lived there "kicked out." *Id.* He admitted that, at one point, he licked a leaf and put it over the surveillance camera in an effort to stop the camera from recording him. *Id.* However, he denied that he picked up the trash can with the intent of throwing it at Ms. Kahn's fence. *Id.*

On cross-examination, Appellant admitted he was the person depicted in the video from October 26, 2018, and he tried to cover up the surveillance camera with a leaf. *Id.* at 53. When that approach did not work, he gave the "middle finger towards the camera[.]" *Id.* He noted he was angry that a surveillance camera was recording him. *Id.*

Further, Appellant admitted the video footage from the surveillance camera showed him "moving" the trash can towards the fence, but he denied he was angry at this time. *Id.* at 53-54. Appellant reiterated he hit the fence with his head when he fell, and he denied that the trash can actually hit the

fence. *Id.* at 54-55. Appellant denied that he saw any damage to the fence after he fell into it. *Id.* at 56.

Ms. Kahn was recalled to the stand. She testified the damage to the fence consisted of panels pulling apart, and she received an estimate of $150.00 in labor to reconfigure the fence. *Id.* at 58. Ms. Kahn denied that the panels pulled apart because of "normal weather [or] settling[.]" *Id.*

At the conclusion of the trial, the trial court convicted Appellant on the sole count of criminal mischief. Specifically, the trial court relevantly stated the following on the record in support of its guilty verdict:

> [Appellant] has been charged with criminal mischief. That's a summary offense under Title 18 Section 3304. The subsection that he was charged with was Subsection 5, intentionally damaging real or personal property of another.
>
> At today's *de novo* hearing, the owner of the property, [which was] a fence on her property and also close to if not abutting [the] neighbor's property[,] was damaged by [Appellant] while he was working on the property, clearing trash.
>
> There were three videos, which, while short, clearly indicated that [Appellant] was upset and unhappy about the presence of a security camera on the fence, and that a trash can in his vicinity, which he was touching, very forcefully, was thrown or pushed towards the fence while actual contact between the fence and the trash can was not on the video [because of the camera's angle]. Frankly, what was on the video as well as the other testimony we believe proves to us beyond a reasonable doubt that, in fact, the trash can did impact the fence; that it was [Appellant's] actions that caused it to impact the fence and that [Appellant] threw the trash can against the fence intentionally, which we believe can be concluded given [Appellant's] apparent animosity towards the security camera presumably.
>
> We note that the other two videos had him scowling into the camera, at one point covering it up, he testifies, with a leaf; and on another occasion, extending his middle finger to the security camera, with what was very clearly a hateful scowl on his face.

> There's also been photographs of the damage to the fence and we find credible the evidence that it was the throwing of the trash can into the fence that caused the damage. And the only evidence presented with regard to any property loss was the testimony of the owner of the fence who provided what she characterized as a written estimate of the cost to repair the fence.
>
> Therefore, and while we note that [Appellant] proffered testimony that contradicts other testimony, frankly, we did not find [Appellant] particularly credible. We did find the other evidence and testimony in the case that we've summarized to be credible, therefore, we find [Appellant] guilty of violation Section 3305 of Title 18 of the Pennsylvania Crimes Code.

*Id.* at 61-63.

The trial court imposed a fine of $100.00, as well as restitution in the amount of $150.00. This timely *pro se* appeal followed. The trial court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement, and consequently, no such statement was filed. However, the trial court filed a Pa.R.A.P. 1925(a) opinion.

Initially, we note Appellant's *pro se* brief is disjointed and violates Pa.R.A.P. 2111. Specifically, Appellant's brief does not contain a "statement of jurisdiction" or a "statement of the questions involved." *See id.* The last omission is particularly problematic as the statement of questions involved defines the specific issue(s) this Court is asked to review.

In any event, we are able to discern from Appellant's brief that Appellant is challenging the sufficiency of the evidence sustaining his conviction. Accordingly, we shall review this claim.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in

the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Brooks***, 7 A.3d 852, 856-57 (Pa.Super. 2010) (citations omitted).

Criminal mischief is defined as:

**§ 3304. Criminal mischief**

**(a)** **Offense defined.-**A person is guilty of criminal mischief if he:

***

(5) intentionally damages real or personal property of another.

18 Pa.C.S.A. § 3304(a)(5).

For purposes of 18 Pa.C.S.A. § 3304(a)(5), an actor is deemed to have intentionally caused the damage where he or she has intentionally committed the act that led to the damage. ***See Commonwealth v. Adams***, 882 A.2d 496, 498 (Pa.Super. 2005) (concluding that evidence was sufficient to find the appellant guilty of criminal mischief where the court found the police officer's

- 8 -

testimony credible that the appellant intentionally punched a vehicle owned by another, resulting in damage to the vehicle); 18 Pa.C.S.A. § 302(b)(1) (defining kinds of culpability, including "intentionally").

Moreover, this Court has held that, for purposes of criminal mischief, damage to the victim's property need not be permanent; but rather, the Commonwealth needs to prove, beyond a reasonable doubt, only that some type of damage was done. **Commonwealth v. Vida**, 715 A.2d 1180, 1181 (Pa.Super. 1998) (holding damage for criminal mischief "does not by definition mean permanent damage").

In the case *sub judice*, after viewing the footage from the surveillance camera, examining photographs of the fence, and considering the testimony of the witnesses, the trial court explicitly found that Appellant intentionally threw or pushed a trash can into Ms. Kahn's fence, and damage to the fence resulted from Appellant's act. While Appellant offered testimony contradicting the trial court's findings, the trial court, as trier of fact, was free to believe all, part, or none of the evidence presented. **Commonwealth v. Bullick**, 830 A.2d 998, 1000 (Pa.Super. 2003).

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude the evidence was sufficient to sustain Appellant's conviction for criminal mischief under subsection 3304(a)(5). **Brooks**, **supra** (setting forth this Court's standard of review). Accordingly, we affirm Appellant's judgment of sentence.

Affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/21/2020