J-S04014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GREGORY HARVEY, | |
| Appellant | No. 705 EDA 2016 |

Appeal from the Judgment of Sentence February 29, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009209-2014

BEFORE: SHOGAN and OTT, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.: **FILED MARCH 29, 2017**

Appellant, Gregory Harvey, appeals from the judgment of sentence entered following his conviction of possession with the intent to deliver illegal narcotics ("PWID"), possessing an instrument of crime ("PIC"), criminal conspiracy, and criminal use of a communication facility.[1] After careful consideration, we affirm in part, reverse in part, vacate the judgment of sentence, and remand for resentencing.

The trial court summarized the facts of this case as follows:

> On June 19, 2014, while investigating alleged narcotic sales at 909 West Arizona Street, Officers Barber and Simmons

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. § 907; 18 Pa.C.S. § 903; and 18 Pa.C.S. § 7512, respectively.

of the Philadelphia Police Department provided a confidential informant with $20 prerecorded buy money. Officer Barber then directed the confidential informant to the area of 909 West Arizona Street [("the residence")]. Officer Simmons observed the confidential informant go to that location, knock on the door and was admitted into the home by an unknown person. After approximately two minutes, the confidential informant exited the home while Appellant watched by the door. The informant then proceeded to Officer Barber and handed him two blue Ziploc packets and a phone number which Appellant provided him. After testing, the Ziploc packets were found to contain cocaine.

On June 24, 201[4], Officers Coaxum and Simmons provided the same informant with $20 of prerecorded buy money and directed him to the same residence. The informant knocked on the door and was greeted by Appellant. The informant was admitted into the residence by the Appellant and stayed approximately two minutes. He then exited the house, returned to where Officer Coaxum was stationed and handed over two blue Ziploc packets. After testing, the Ziploc packets were found to contain cocaine.

On June 26, 201[4], Officers Simmons and McLean dialed the phone number given to the informant on the first trip. Once they received no answer, they provided the same informant with $20 prerecorded buy money. The informant then returned to the residence. Prior to the informant arriving at the residence, the police officers observed another male, later identified as Mr. Wade, walk up to the home, take out a key from his pocket, unlock the front door and enter the home. Moments later, the informant arrived, knocked on the door and was admitted by Mr. Wade. After approximately two minutes, the informant exited the residence while Mr. Wade watched from the door. The informant met with Officer McLean and handed him two blue Ziploc packets, which, after testing, were found to contain cocaine.

The officers then executed a search and seizure warrant at 909 West Arizona Street. Upon entering, the officers observed a living room, kitchen, a basement, and three bedrooms on the second floor. On the second floor, Appellant's room, the master bedroom, was the only room that appeared to be occupied. Only Appellant's clothes were found in the home. Officer Floyd arrested Mr. Wade in the living room and confiscated $24 and a

key to the front door. Officer Francis arrested Appellant in the master bedroom on the second floor. In that bedroom, Officer Francis found $1,075 in cash on the dresser, $25 in his gym shorts, and a cell phone that responded to the number that was given to the informant on his first visit. In the kitchen, Officer Lee found a window sill with a false compartment which contained $20 buy money from that day and twenty-seven blue plastic Ziploc packets containing cocaine which were consistent with the ones previously purchased. Officer Barber confiscated two letters from the dining room addressed to the Appellant. Other than Mr. Wade's presence in the house and the key he had in his pocket, there was no indication that Mr. Wade lived in the home.

Trial Court Opinion, 7/25/16, at 2-3 (internal citations omitted).

Following a bench trial on December 14, 2015, Appellant was convicted of the above-referenced charges. Appellant was sentenced on February 29, 2016, to an aggregate term of two and one-half to five years of incarceration, followed by five years of probation. Appellant filed a *pro se* appeal on March 2, 2016. Appellant's counsel filed a post-sentence motion on March 3, 2016, and the trial court denied the motion by order entered March 7, 2016.[2] Both the trial court and Appellant complied with the mandates of Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

_____

[2] While Appellant's notice of appeal was premature when filed, it was perfected by the subsequent action of his counsel in filing a timely post-sentence motion, which the trial court reviewed and denied on the merits. *See Commonwealth v. Cooper*, 27 A.3d 994, 1007-1008 (Pa. 2011) (concluding the trial court appropriately treated the appellant's *pro se* notice of appeal as a premature filing that was perfected upon the trial court's proper consideration and denial of the subsequent, timely-filed, counseled post-sentence motion).

I.    Is Appellant entitled to an arrest of judgment with regard to his convictions for possession with intent to deliver a controlled substance, criminal conspiracy, possessing instruments of crime and criminal use [of] communications facility since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden of proving Appellant's guilt beyond a reasonable doubt?

II.    Is Appellant entitled to a new trial since the trial court erred when it denied his motion to reveal the identity of the confidential informant?

III.    Is Appellant entitled to be resentenced since his concurrent two and one-half to five year sentences for possession with intent to deliver a controlled substance and criminal conspiracy are unreasonable since they are excessive and do not reflect his character, history or condition?

Appellant's Brief at 4.

In his first issue, Appellant asserts that he is entitled to an arrest of judgment on his convictions for PWID, criminal conspiracy, PIC, and criminal use of communications facility because there was insufficient evidence to sustain the convictions. Appellant's Brief at 15. The standard for evaluating sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt

by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

With regard to his conviction for PWID, Appellant maintains that the Commonwealth failed to sustain its burden of proving his guilt beyond a reasonable doubt. Appellant's Brief at 15. Appellant contends that the Commonwealth failed to establish that Appellant constructively possessed the drugs or money recovered from the residence. *Id.* at 21. Appellant also argues that other individuals, including Mr. Wade, had access to the residence, and it may have been these other individuals who provided drugs to the confidential informant ("CI"). *Id.* at 24. Appellant asserts that the Commonwealth failed to establish that he had control over the drugs found in the residence. *Id.*

In order to uphold a conviction for PWID pursuant to 35 P.S. § 780-113(a)(30), the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. *Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa. Super. 2000) (*en banc*). The intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case. *Commonwealth v. Conaway*, 791 A.2d 359, 362-363 (Pa. Super. 2002). "Factors to consider in determining whether the drugs were possessed with the intent to deliver

- 5 -

include the particular method of packaging, the form of the drug, and the behavior of the defendant." ***Commonwealth v. Perez***, 931 A.2d 703, 708 (Pa. Super. 2007).

Where the contraband a person is charged with possessing is not found on the person of the defendant, the Commonwealth is required to prove constructive possession. ***Commonwealth v.Walker***, 874 A.2d 667, 677 (Pa. Super. 2005).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Brown***, 48 A.3d 426, 430 (Pa. Super. 2012) (internal quotation marks omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. ***Commonwealth v. Kinard***, 95 A.3d 279, 292 (Pa. Super. 2014).

Here, the evidence reflects that on June 19, 2014, the first time officers arranged for the CI to approach the residence, Officer Leslie Simmons observed Appellant in the doorway of the residence when the CI exited. N.T., 12/14/15, at 6-9. Officers watched the CI leave the residence and go directly to another officer to whom the CI provided two Ziploc plastic packets. ***Id.*** at 7. Those packets contained cocaine. ***Id.*** at 7.

On June 24, 2014, the CI was again sent to the residence with pre-recorded buy money. N.T., 12/14/15, at 9. When the CI knocked on the door of the residence, Appellant greeted the CI. *Id.* at 9. Appellant and the CI proceeded inside the residence and approximately one to two minutes later, the CI exited the residence. *Id.* at 9. Appellant remained at the doorway of the residence watching the CI leave. *Id.* at 10. The CI again returned to the officers and produced two blue Ziploc plastic packets which later tested positive for cocaine. *Id.* at 10.

On June 26, 2014, officers met with the same CI. *Id.* at 11. During the June 19, 2014 encounter, the CI was provided a telephone number by the individual in the residence. *Id.* at 11, 13. Officers dialed that number, but there was no answer. *Id.* at 11. As a result, the CI was provided pre-recorded buy money and directed to the residence. *Id.* at 11-12. Prior to the CI reaching the door of the residence, another male, later identified as Mr. Wade, entered the location by using a key. *Id.* at 12. When the CI arrived at the door, Mr. Wade opened the door for the CI. *Id.* After being in the residence approximately one to two minutes, the CI exited and again met with officers. *Id.* at 12. The CI gave officers two plastic Ziploc packets that tested positive for cocaine. *Id.* at 12.

Approximately five minutes after the CI's purchase on June 26, 2014, officers executed a search and seizure warrant at the residence. *Id.* at 13. Officers arrested Mr. Wade in the living room and confiscated $24.00 and a

key that unlocked the front door. *Id.* at 13. Officers arrested Appellant in the master bedroom on the second floor. *Id.* at 13. When arrested, Appellant was nude. *Id.* Officers confiscated $1,075 from that room and $25 from Appellant's gym shorts. *Id.* at 13. A cellular telephone that was plugged into an electrical outlet was also recovered from that room. *Id.* at 13-14. The telephone responded to the number that was provided to the CI on his first controlled buy at the residence on June 19, 2014. *Id.* at 13-15. Officer Simmons testified that the room in which Appellant was arrested appeared to be the only room where someone was living. *Id.* at 15. Mail addressed to Appellant at the residence was found in the bedroom where Appellant was arrested and on a table in the dining room. *Id.* at 14. Additionally, officers confiscated twenty-seven blue Ziploc plastic packets containing cocaine from a hidden compartment in the kitchen. *Id.* at 14-15. Officers also recovered from the residence "one clear Ziploc packet[] and 31 red Ziploc packets. Inside those packets . . . was cocaine powder. 62 yellow pills, Your Honor alleged Percocet. Two silver razor blades, one in [a] Ziploc[] packet containing new and unused blue Ziploc packets." *Id.* at 14.

Viewing the evidence in the light most favorable to the Commonwealth, there is sufficient evidence to establish every element of PWID. Although the drugs were discovered in the residence and not on Appellant's person, the totality of circumstances supports the conclusion that Appellant constructively possessed the drugs. Officers observed Appellant

interact directly with the CI on two of the three encounters at the residence. The evidence supports the conclusion that Appellant was living at the residence. During the execution of the search warrant, Appellant was found naked in a bedroom of the residence that appeared to be inhabited by him. The telephone number given to the CI on the first encounter matched the number on the phone found in the same room as Appellant when he was arrested. Buy money from the CI's encounter on June 26, 2014, was found in the hidden compartment in the kitchen with the drugs, supporting the conclusion that someone in the residence conducted the sale with the CI on that date. *Id.* at 25. Moreover, the fact that Mr. Wade and, according to Appellant, others had access to the residence, does not bar the conclusion that Appellant constructively possessed the drugs. *See Kinard*, 95 A.3d at 292 (stating that it is possible for two people to have joint constructive possession of an item of contraband.). Additionally, the volume of and manner in which the drugs were packaged supports the conclusion that Appellant intended to deliver these drugs and that they were not for personal consumption. *Perez*, 931 A.2d at 708. Thus, we agree with the trial court's conclusion that there was sufficient evidence to establish that Appellant possessed the drugs with the intent to deliver them.

Appellant also argues that the Commonwealth failed to prove beyond a reasonable doubt that Appellant was engaged in a drug trafficking conspiracy with any individuals inside his residence. Appellant's Brief at 24-

25. Appellant contends that the evidence is insufficient to prove that he entered into an agreement with anyone to sell drugs inside the residence. *Id.* at 27. Appellant asserts that while he was present at the residence and may have stayed there on occasion, and others also frequented the premises, these facts do not establish a conspiracy. *Id.* at 27. Appellant maintains that mere presence or association does not establish a conspiracy. *Id.* Appellant also contends that it is significant that Mr. Wade had a key to the premises, but Appellant did not. *Id.*

Pursuant to the Crimes Code, conspiracy is defined as follows:

**§ 903. Criminal conspiracy**

**(a) Definition of conspiracy.--** A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a).

> A conspiracy is almost always proved through circumstantial evidence. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (internal citations and quotation marks omitted).

The circumstantial evidence in this case, as previously outlined, supports the trial court's conclusion that Appellant was involved in a conspiracy to sell drugs. Appellant was observed interacting directly with the CI during two of the controlled buys. The evidence indicates that Appellant lived at the home and that Mr. Wade had unfettered access to the residence as reflected by the fact that Mr. Wade had a key to the residence. N.T., 12/14/15, at 12. Mr. Wade was seen entering the residence immediately prior to the CI's arrival on the third controlled buy, and he opened the door for the CI. *Id.* Both parties were at the residence immediately following the controlled buy on June 26, 2014. *Id.* at 15-16. The pre-recorded buy money and additional drugs were also found at the residence during execution of the warrant. *Id.* Thus, viewing the evidence in the light most favorable to the Commonwealth, we agree with the trial court that there was sufficient evidence supporting the conclusion that Appellant and Mr. Wade had conspired to sell drugs.

Appellant also argues that there was insufficient evidence to sustain his convictions of PIC and criminal use of a communication facility. Appellant's Brief at 28. Appellant contends that while a telephone number was allegedly provided to the police and/or CI, a telephone was not identified as facilitating any of the drug transactions. *Id.* at 28. Appellant maintains that "[t]here was no testimony presented at trial to show that Appellant constructively possessed any drugs or money found at the

residence or the telephone allegedly used to facilitate any drug transaction since it was not established that Appellant knew or had reason to know that drugs were being sold at the premises." *Id.* at 28-29.

The offense of criminal use of a communication facility is defined as follows:

> A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S. § 7512. Thus, to support a conviction under Section 7512, the Commonwealth must establish beyond a reasonable doubt that:

> (1) Appellant[] knowingly and intentionally used a communication facility; (2) Appellant[] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred ... Facilitation has been defined as "any use of a communication facility that makes easier the commission of the underlying felony."

*Commonwealth v. Moss*, 852 A.2d 374, 382 (Pa. Super. 2004) (internal citation omitted).

As explained previously, we concluded that there was sufficient evidence to establish that Appellant constructively possessed the drugs and money found at the residence and intended to deliver the drugs. Thus, the underlying felony occurred. *Moss*, 852 A.2d at 382. Additionally, the evidence reflects that the CI was given the cell phone number during his first

controlled buy, during which officers observed Appellant at the residence. N.T., 12/14/15, at 11, 13, 15. The telephone number corresponded to the cell phone that was recovered from the room where Appellant was apprehended, and it was in close proximity to $1,075. *Id.* at 14. Thus, viewing the evidence in the light most favorable to the Commonwealth, it is reasonable for the fact-finder to conclude that Appellant used the cell phone to facilitate his practice of selling drugs. Accordingly, Appellant knowingly and intentionally used the communication facility and knowingly and intentionally facilitated the felony. *Moss*, 852 A.2d at 382. We agree with the trial court that there was sufficient evidence to sustain this conviction.

In considering Appellant's remaining conviction, we observe that the criminal code defines PIC as follows:

> **(a) Criminal instruments generally.--**A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.
>
> * * *
>
> **(d) Definitions.--**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> * * *
>
> **"Instrument of crime."** Any of the following:
>
>> (1) Anything specially made or specially adapted for criminal use.
>>
>> (2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

- 13 -

18 Pa.C.S. § 907.

The telephone number corresponding to the telephone possessed by Appellant was given to the CI during the first controlled buy on June 19, 2014. N.T., 12/14/15, at 11, 13, and 15. During execution of the search warrant immediately after the third controlled buy, the same phone was recovered in the room in which Appellant was apprehended and in close proximity to $1,075. *Id.* at 13. Drugs and pre-recorded buy money were also recovered from the residence. *Id.* at 15-16, 25. Thus, it is a logical conclusion that Appellant utilized the telephone to facilitate his drug dealings.

In this context, however, we cannot agree that the telephone meets the definition of an "instrument of crime." There is no evidence that the telephone was "[a]nything specially made or specially adapted for criminal use." 18 Pa.C.S. § 907. Additionally, while arguably Appellant used the telephone for criminal purposes, there is no evidence that it was possessed by Appellant "under circumstances not manifestly appropriate for lawful uses it may have." *Id.*

Moreover this Court has ruled that "the mere use of an item to facilitate a crime does not transform the item into an instrument of crime for purposes of the PIC statute." *Commonwealth v. Williams*, 808 A.2d 213, 215 (Pa. Super. 2002). In *Williams*, a panel of this Court held that a walkie-talkie the defendant used to facilitate drug sales was not an

- 14 -

"instrument of crime" for purposes of a conviction under Section 907. *Id.* The *Williams* Court distinguished the facts before it from those presented in *Commonwealth v. Vida*, 715 A.2d 1180 (Pa. Super. 1998), where this Court found that a paint stick the defendant used to paint graffiti on a lamp pole was an "instrument of crime" under Section 907(d). *Id.* The *Williams* Court explained that in *Vida*, "the stick itself was the instrument whereby the criminal mischief (graffiti) was committed." *Id.* The *Williams* Court explained that, conversely in *Williams*, "[w]hile [A]ppellant's use of the walkie-talkie facilitated the narcotics sales, . . . the statute was not intended to include as instruments of crime equipment not used in the crime itself, but used only to facilitate the crime." *Id.*

Here, the evidence supports the conclusion that the telephone was used to **facilitate** the narcotics sales. It was not an instrument of the crime itself. Thus, pursuant to *Williams*, we are constrained to conclude that there was insufficient evidence to establish that Appellant was guilty of PIC. We accordingly vacate Appellant's judgment of sentence for PIC.

In his second issue, Appellant argues that he is entitled to a new trial because the trial court erred when it denied his motion to reveal the identity of the CI. Appellant's Brief at 30. Appellant asserts that he established the materiality of the identity of the CI, and his request was reasonable under the circumstances of the case. *Id.* at 32. Appellant maintains that the identity of the CI is crucial to his defense in that testimony presented at trial

did not identify Appellant as providing drugs to the CI or establish that Appellant knew that drugs were being sold at the residence. *Id.* at 32. Moreover, Appellant contends that there was no testimony presented to show that the CI would be in danger should his identity be revealed. *Id.*

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." *Commonwealth v. Washington*, 63 A.3d 797, 801 (Pa. Super. 2013).

> The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth.

*Commonwealth v. Watson*, 69 A.3d 605, 607-608 (Pa. Super. 2013) (internal citations omitted).

In addressing Appellant's claim, the trial court provided the following analysis:

> This [CI] was a credible informant. Detective Simmons testified he used this particular informant for over ten years which resulted in hundreds of arrests, convictions and seizures of narcotics. There was no issue of misidentification because there were only two people; one of which was the Appellant, who was seen letting the [CI] in and out of the home on separate occasions. Although the officers did not see the transactions take place, the facts and circumstances that the officers

- 16 -

observed dictate there was no reasonable possibility that the [CI] would give evidence that would exonerate the Appellant.

Additionally, disclosing the informant's identity may place the informant in danger. The informant used in this case is actively working for the police. In the past, Officer Simmons personally experienced two [CIs] who were threatened once their identities were disclosed. One was stabbed.

Appellant has failed to show that the [CI] was material to the Appellant's defense of misidentification and that the request to disclose the informant's identity was reasonable. As such, this [c]ourt properly denied Appellant's motion to compel disclosure of the [CI's] identity.

Trial Court Opinion, 7/25/16, at 11.

We agree with the trial court's conclusion that Appellant failed to show that the disclosure of the CI's identity was material to his defense. Despite the testifying officers not directly observing the actual drug purchases, the circumstantial evidence, as discussed previously, was sufficient to support the conclusion that Appellant possessed drugs and delivered them to the CI. Appellant fails to present any plausible explanation as to how the CI's testimony could have benefitted him. Because Appellant failed to clear the first hurdle of establishing that disclosure of the identity of the CI was necessary to his defense, we need not engage in the balancing of relevant factors to determine whether the CI's identity should be revealed. *Watson*, 69 A.3d at 608.

In his third issue raised on appeal, Appellant argues that the trial court's aggregate sentence of two and one-half to five years of imprisonment is unreasonable and manifestly excessive.[3] Appellant's Brief at 39. Appellant further asserts that the sentence does not reflect a proper consideration of his history, character and condition. *Id.*

As outlined in our discussion of Appellant's claims of insufficient evidence, we are compelled to reverse his conviction for PIC. Because vacating Appellant's sentence for PIC may disrupt the trial court's overall sentencing scheme, we vacate his judgment of sentence in its entirety and remand for resentencing. *See Commonwealth v. Barton-Martin*, 5 A.3d 363, 370 (Pa. Super. 2010) (providing that where vacating a sentence disrupts a trial court's overall sentencing scheme, this Court will remand to the trial court for resentencing). As a result, we need not address Appellant's final issue regarding his sentence.

Conviction for PIC reversed; remaining convictions affirmed. Judgment of sentence vacated. Matter remanded for resentencing consistent with this Memorandum. Jurisdiction relinquished.

---

[3] We note that Appellant, throughout his brief, asserts that he is entitled to resentencing because the concurrent two-and-one-half-to-five-year sentences for PWID and criminal conspiracy are unreasonable and excessive. Appellant's Brief at 34. Because Appellant also argues that his aggregate sentence is unreasonable and excessive, as noted, we are compelled to address his judgment of sentence in its entirety and not merely the sentences for PWID and criminal conspiracy.

Judge Ott joins the Memorandum.

P.J.E. Stevens files a Concurring Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2017