580 A.2d 769

COMMONWEALTH of Pennsylvania

v.

Shane EDDOWES, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 18, 1990.

Filed Aug. 13, 1990.

Reargument Denied Oct. 19, 1990.

552

554

Joshua M. Briskin, Philadelphia, for appellant.

Karen L. Grigsby, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before OLSZEWSKI, KELLY,* and JOHNSON, JJ.

OLSZEWSKI, Judge:

Shane Eddowes appeals from the judgment of sentence for first-degree murder, aggravated assault, conspiracy,

---

* Kelly, J., did not participate in the consideration or decision of this case.

and possession of an instrument of crime. He challenges the weight and sufficiency of the evidence, alleges prosecutorial misconduct, and asserts that the trial court erred in admitting evidence of prior bad acts. We find no error in the prosecutor's comments or in the admission of evidence of prior bad acts. We further find the evidence sufficient with regard to all counts except possession of an instrument of crime.

On July 11, 1987, Dean Seiss and friends left a party near appellant's home. They encountered appellant and a friend and a fight erupted between Seiss and appellant. Seiss chased appellant back to appellant's home while appellant called out for his friends to help. Appellant entered his home, picked up a rifle, and returned. He waved the rifle and stated "I'm crazy enough to kill you." Appellant then went back inside the house and returned with another object in his hand. He slashed Richard Hepp with the object and then stabbed Seiss with it.

Appellant's friends arrived and chased Seiss into the street, where he collapsed. The friends beat and kicked Seiss until police arrived. Seiss died from the injuries he received that night.

Appellant was tried before a jury and found guilty of first-degree murder, aggravated assault, conspiracy, and possessing an instrument of crime. He filed timely post-trial motions, which were denied. This appeal followed.

Appellant asserts that the evidence was insufficient as a matter of law to sustain the verdicts. Upon reviewing the sufficiency of the evidence, we must view the evidence and all permissible inferences therefrom, in the light most favorable to the Commonwealth and determine whether the evidence is sufficient to prove the defendant's guilt beyond a reasonable doubt. *Commonwealth v. Ruffin*, 317 Pa.Super. 126, 463 A.2d 1117 (1983).

Appellant first argues that there was insufficient evidence to establish that he was the one who committed the offense. We find that the evidence was sufficient to

establish that it was appellant who killed Seiss. Testimony by Richard Hepp, a key Commonwealth witness, implicated appellant as having used a weapon upon on a vital part of Seiss's body. Hepp testified that appellant slashed him across the stomach with a shiny object and then stabbed Seiss. N.T. at 248–249.

Moreover, other evidence also supports the conclusion that Seiss was stabbed by appellant, and began to flee but collapsed from the stab wound before the crowd caught up to him and beat him. Commonwealth witness, Andrew Hartman, testified that he saw appellant run at Seiss holding his right arm out from his body with his right hand clenched into a fist. N.T. at 377. He further testified that following the attack, Seiss seemed to be hurt since he appeared to be limping as he ran away. N.T. at 381–384. Tim Whatley, a defense witness, testified that he saw Seiss collapse before the crowd reached him. N.T. at 580. In addition, Dr. Catherman testified that a person with a stabbing wound such as Seiss's would not be immediately incapacitated but would be able to run until the loss of blood pressure forced him to collapse. N.T. at 501–504.

Based upon the above review in the light most favorable to the Commonwealth, we find that there was sufficient evidence to prove beyond a reasonable doubt that it was appellant who stabbed Seiss.

■ Next appellant argues that there was insufficient evidence to convict him of murder because evidence showed that he acted under provocation or imperfect self-defense so as to negate the element of malice and reduce the crime to voluntary manslaughter.

■ Voluntary manslaughter is defined by the Crimes Code as a killing committed without lawful justification but "under a sudden and intense passion resulting from serious provocation." 18 Pa.C.S. § 2503(a). To determine whether there is adequate provocation to reduce homicide to voluntary manslaughter, the test is whether a reasonable man confronted with this same series of events would become

impassioned to the extent that his mind was incapable of cool reflection. *Commonwealth v. McCusker,* 448 Pa. 382, 389–390, 292 A.2d 286, 290 (1972).

We find that there was sufficient evidence to support the jury's rejection of a voluntary manslaughter verdict. The evidence indicated that appellant retreated to the safety of his home and closed the door, but then returned with a rifle. After waving the rifle around, appellant returned to his home once again and reemerged with a shiny object which he used to slash Richard Hepp's stomach and then stab Seiss. This evidence indicates that appellant had time to reflect upon his actions, and did indeed engage in such reflection.

■ Appellant also contends that the verdict is improper since he was acting under an unreasonable belief that his life was in danger. We find no merit to this contention. Statutory law provides:

A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing, but his belief is unreasonable.

18 Pa.C.S.A. § 2503(b). The evidence demonstrated that appellant was not acting under the unreasonable belief that he was in danger. Appellant chose to leave the safety of his home twice—first, to wave a rifle around and once again to stab Seiss. In addition, there was evidence that appellant and 10 to 15 of his friends chased the defendant and beat him until the police arrived. This does not show that appellant believed (either reasonably or unreasonably) that he was in danger.

■ In addition, appellant asserts that his state of intoxication negated the specific intent necessary for a conviction of first-degree murder, and instead warranted a conviction of third-degree murder.

The Pennsylvania Supreme Court has held that a defendant's intoxication may prevent his actions from having the

specific intent to kill which is required for murder of the first degree. *Commonwealth v. Tarver*, 446 Pa. 233, 284 A.2d 759 (1971). In addition, 18 Pa.C.S.A. § 308 provides that evidence of intoxication may be introduced whenever it is relevant to reduce murder to a lower degree. This Court, however, has held that mere intoxication will not negate the specific intent to kill, but rather a defendant must be overwhelmed by alcohol to the point of losing his or her faculties before an act of murder will be reduced to murder in the third degree. *Commonwealth v. Carter*, 377 Pa.Super. 93, 113–15, 546 A.2d 1173, 1183 (1988). Despite conflicting evidence as to whether appellant was intoxicated, the evidence is sufficient to show that appellant was not so overwhelmingly intoxicated as to negate his specific intent to kill. The evidence showed appellant had the specific intent to kill because, while waving his rifle, he said, "I'm crazy enough to kill you." Furthermore, the evidence demonstrated that appellant was not so intoxicated as to be losing his faculties since appellant returned to his home, put down his rifle, and reappeared with the shiny object he used to stab Seiss. In addition, evidence also showed that appellant chased and beat Seiss and fled as the police arrived. This indicates that the defendant was capable of reasoning and understanding.

For all of the reasons stated above, the judgment of sentence for first-degree murder is affirmed.

 Appellant also asserts that the evidence was insufficient to find a criminal conspiracy. We disagree. The essence of a criminal conspiracy is the agreement to perform an unlawful act. *Commonwealth v. Savage*, 388 Pa.Super. 561, 569–71, 566 A.2d 272, 276 (1989); 18 Pa.C.S.A. § 903. This agreement need not be written or express; tacit agreement may be inferred from the circumstances. *Id.*

Commonwealth testimony established that appellant called his friends to help while Seiss was attacking him. N.T. at 242. While appellant attacked Seiss, a group of 10 to 15 people arrived and chased Seiss into the street, where

they caught him and beat him. N.T. at 249. Appellant participated in the affray. N.T. at 440–441. These facts do not suggest spontaneous, independent yet contemporaneous assaults, as in *Commonwealth v. Kennedy,* 499 Pa. 389, 453 A.2d 927 (1982). On the contrary, the record shows a concerted effort indicative of a tacit agreement to assault Seiss. Accordingly, the judgment of sentence for criminal conspiracy is affirmed.

■ Appellant further alleges that the court did not have jurisdiction to enter a judgment for aggravated assault because the bill of information charged only simple assault. The record does not support his contention. Bill of Information 1758 charged four counts of assault, two of which were aggravated assault against Richard Hepp. Furthermore, the evidence was sufficient to support this conviction. Testimony showed that appellant pointed a rifle at Hepp and slashed at Hepp with the same instrument used to kill Seiss. N.T. at 246–248. The fact that appellant did not cause any serious injury is irrelevant, as the statute punishes attempts as well as completed assaults. 18 Pa.C.S.A. § 2702(a). *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1978), cited by appellant, is completely inapposite, as that case turns on the question of intent, not the severity of the injury. The judgment of sentence for aggravated assault is affirmed.

■ The conviction for possessing an instrument of crime, however, must be reversed. Appellant contends that the evidence did not support a conviction for possessing an instrument of crime because the weapon used was a screwdriver. The Commonwealth does not dispute that the murder weapon was a screwdriver; and indeed, the evidence is insufficient to show that the weapon was anything other than a screwdriver.[1] The only question, then, is whether a

1. Dr. Catherman described the fatal wound as atypical of knife wounds. The entry was jagged and rectangular, rather than smooth and elliptical. The wound was 1 centimeter long by .3 centimeters wide and 5¾ inches deep. The wound was consistent with the theory that Seiss was stabbed with a screwdriver. *See* N.T. at 493–494, 499–501.

screwdriver is an instrument of crime in this context. We find that it is not.

█ Statutory law defines an instrument of crime as:

(1) Anything specially made or specially adapted for criminal use; or

(2) anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

18 Pa.C.S.A. § 907. The mere fact that a particular item was used in the perpetration of a crime does not prove that the item is an "instrument of crime." *Commonwealth v. Rodriguez*, 316 Pa.Super. 203, 214, 462 A.2d 1310, 1316 (1983).

█ The Commonwealth asserts that the screwdriver is an instrument of crime because it is commonly used in the crime of burglary and Eddowes' use of it was not manifestly lawful. We reject this argument. To determine whether an object is an instrument of crime under the second statutory criterion, we must look at the context. An item may be an instrument of crime in one context, but not in another. *Compare Commonwealth v. Cavanaugh*, 278 Pa.Super. 542, 420 A.2d 674 (1980) (finding that a tire iron is not an instrument of crime in an assault case) with *Commonwealth v. McNeil*, 388 Pa.Super. 108, 564 A.2d 1289 (1989) (finding that a tire iron is an instrument of crime in burglary). The Commonwealth has not shown that the screwdriver was used in the context of burglary, nor has it shown that screwdrivers are commonly used for assault and murder. Accordingly, the judgment of sentence for possession of an instrument of crime must be vacated.

█ Appellant also contends that the verdicts were against the weight of the evidence. We disagree.

Our Supreme Court has recently opined that "a challenge to the weight of the evidence is not appealable." *Commonwealth v. Wallace*, 522 Pa. 297, 315, 561 A.2d 719, 728 (1989), following *Commonwealth v. Nelson*, 514 Pa. 262, 271 n. 3, 523 A.2d 728, 733 n. 3 (1987). Nevertheless, these

cases do not expressly preclude us from addressing a weight of the evidence claim. Furthermore, neither of these cases involved a direct challenge to the weight of the evidence; therefore, this pronouncement is dictum rather than binding authority. This Court has traditionally reviewed weight of the evidence claims; accordingly, we will continue to address the merits of such claims until directed to the contrary by our Supreme Court.

 A trial court may award a new trial if the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Hunter*, 381 Pa.Super. 606, 616–18, 554 A.2d 550, 555 (1989). The decision to grant or deny a new trial on that ground will not be reversed absent an abuse of discretion. *Id.* After careful review of the record and transcript, we find that the verdicts of guilty of first-degree murder, aggravated assault and conspiracy are not so contrary to the evidence as to shock one's sense of justice; accordingly, a new trial is not appropriate.

 Appellant also claims that the prosecutor committed misconduct in his closing argument. He asserts that the prosecutor improperly appealed to the jury's sympathy by stating that "Dean Seiss is six feet under the ground in a grave." We find that the prosecutor's comments were fair response to the defense's argument; accordingly, we find no error.

The prosecutor's comment must be viewed in context. In his closing argument, defense counsel said:

The thought of it, I have my own son. It's horrible. There is nothing that can be worse than what occurred in this particular case.

Shane's family, they are over there, his brother, his father, his brother, his friends, his relatives. They have an interest in the outcome of this case also and that is that their son didn't do it. He has been punished and accused in this particular case in this incident, and they have had to go through the worse type of torture or let's just say that it is equal, believe me, knowing about it as I

do, it is equal to the torture of having lost a child because they can lose their child just like that, the same thing, and I'm not going to minimize in any way what happened.

N.T. at 777–778.

In response to this plea for sympathy, the prosecutor said:

[A] large part of the defense, ladies and gentlemen, I submit to you has been an attempt to kind of twist the facts a little bit in terms of who Dean Seiss is and what he's all about and who this defendant is and what he's all about, in an attempt to make you feel sympathy, to decide this case on sympathy and portray Dean Seiss as something that he's not quite, and portray the defendant as something that he not quite is.

It started in the opening argument, when Mr. Briskin said to you, and this is something that will be implanted on my brain for the next year. He said to you you are going to hear evidence that Shane Eddowes is as much a victim of this case as Dean Seiss is, as much a victim as Dean Seiss.

Dean Seiss is six feet under the ground in a grave, and [appellant's] walking around. When [appellant's] parents want to visit him, they go see him. When Dean Seiss' parents want to visit him, they go to the graveyard, and they tell you that he's as much a victim as Dean Seiss.

N.T. at 884–885.

■ In a vacuum, the prosecutor's comments might be considered improper; however, our Supreme Court has given prosecutors greater leeway when they respond to defense pleas for sympathy. *See, e.g., Commonwealth v. Perkins*, 473 Pa. 116, 133–38, 373 A.2d 1076, 1085–1086 (1977); *Commonwealth v. DeHart*, 512 Pa. 235, 255–57, 516 A.2d 656, 667 (1986), *cert. denied* in 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987). We find that the prosecutor's comments in this case, viewed in context, do not justify a new trial.

██ Appellant further argues that the trial court erred in admitting testimony of a prior confrontation between appellant and Seiss. Appellant claims that this evidence of a prior bad act was unfairly prejudicial. The trial court found that this evidence was admissible, as it tended to show motive. We agree with the trial court.

██ Evidence of prior bad acts is ordinarily inadmissible; however, such evidence may be admitted to show motive or intent. *Commonwealth v. Pacell,* 345 Pa.Super. 203, 206–08, 497 A.2d 1375, 1377 (1985). This evidence may be admitted even if the prior act is somewhat remote in time. *See Commonwealth v. Curry,* 318 Pa.Super. 490, 465 A.2d 660 (1983) (prior confrontation between defendant and victim occurred two or three years before the assault in question).

In the present case, the Commonwealth called several witnesses to testify regarding a prior fight between appellant and Seiss. These witnesses reported that approximately six months before Seiss's death, Seiss was at a bowling alley with friends. N.T. at 124–125. Seiss and appellant fought, and appellant threw a hammer at Seiss's head. N.T. at 128–130. A few days after the fight at the bowling alley, appellant was still angry about the incident. N.T. at 199–200. On the night of his death, Seiss apparently picked the fight with appellant because of the incident at the bowling alley. N.T. at 243–244. This evidence was relevant to show motive; accordingly, the trial court did not abuse its discretion by admitting it.

Judgment of sentence for murder in the first degree, criminal conspiracy, and aggravated assault are affirmed. Judgment of sentence for possession of an instrument of crime is vacated.