J-S21007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOMINIQUE ISAAC HARRIS | : | |
| | : | |
| Appellant | : | No. 1757 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 1, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0003082-2022

BEFORE:  LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.:                **FILED DECEMBER 12, 2024**

Dominique Isaac Harris appeals from the judgment of sentence, entered in the Court of Common Pleas of Bucks County, after the court sentenced him to serve a term of life imprisonment without the possibility of parole subsequent to a jury convicting him of one count each of first-degree murder[1] and possession of an instrument of crime,[2] in connection with the murder of Michael Pickens, the victim, who was Harris' former co-worker.  Harris challenges certain of the court's evidentiary rulings.  After careful review, we affirm.

On March 30, 2022, at approximately 8:00 A.M., Andrea Sigfried, an employee of Bensalem Beer & Soda ("BB&S"), received a phone call from her

---

[1] **See** 18 Pa.C.S.A. § 2502(a).

[2] **See id.** at § 907(a).

co-worker, who had arrived at their workplace to find "a lot of blood in the parking lot," as well as a red Wendy's restaurant visor, a blue knit woolen hat, and a brown Fila boot, among other things. N.T. Jury Trial, 4/18/23, at 48, 84. Upon her arrival at the store, Sigfried watched surveillance footage from the night before depicting a chase between two men, which ended in one man stabbing the other in the BB&S parking lot. *Id.* at 50. Siegfried called the police, who conducted further investigation of the scene. *Id.*

Detective Gregory Jackson, of the Bucks County Police Department, testified at trial that police recovered a phone at the scene, revealing several missed calls, one of which was determined to be from Pickens' childhood friend, James Smith. *See id.* at 91, 114. Smith later identified the boot and visor found at the scene as belonging to Pickens. *Id.* at 114-15.

Iliriani Elshani, the manager of the nearby Wendy's,[3] where Pickens and Harris previously worked together, testified that she had worked with Pickens on the night of the incident. *Id.* at 124-25. Elshani explained that she and Pickens typically would leave together at the end of the shift. *Id.* at 126. However, while Elshani and her coworkers were closing, they noticed that, although Pickens was missing, he had left his jacket on a chair in the break room. *Id.* at 125.

---

[3] Officer Jennifer Pettine, who assisted in the investigation, testified that the Wendy's is in "[t]he next shopping center over" from BB&S. *Id.* at 58.

At trial, the Commonwealth elicited testimony from Elshani concerning a previous altercation that occurred between Pickens and Harris at work. *Id.* at 123. According to Elshani, on January 27, 2022, Pickens and Harris got into a verbal altercation, which turned physical, and security footage showed both men hit each other. *Id.* As a result, police were called and Harris' employment was terminated because, upon review of the security footage, Harris was determined to be the initial aggressor. *Id.*

Additionally, during the prosecution's case in chief, the Commonwealth presented BB&S surveillance video footage of the instantly charged murder, which showed the perpetrator chasing the victim and stabbing him continuously. *See* Trial Exhibit "CW-7," at 00:55 – 04:16. After the stabbing attack, an eight-minute portion of the video depicts the victim, alone, crawling toward the main street and attempting, but failing, to stand up. *Id.* at 04:16–12:14. Thereafter, a vehicle enters the frame and runs over the victim twice. *Id.* at 12:14–12:30. The driver—who appears to be the same person who stabbed the victim—proceeds to get out of the vehicle and lift the victim, who is still alive, "load[]" him into the back seat of the vehicle, and drive away. *Id.* at 12:37–13:05; *see also* N.T. Jury Trial, 4/18/23, at 78, 80.

During their investigation, police determined it was Harris' vehicle that was used in the attack. ***See id.*** at 179. Upon recovering Harris' vehicle, police found blood that contained both Pickens' and Harris' DNA and matched DNA collected at both the BB&S and the location where police found Pickens' body. *See* N.T. Jury Trial, 4/19/24, at 114.

Harris was arrested the next day, on March 31, 2022, and charged with the above-mentioned crimes. *See* Criminal Complaint, 7/15/22. On October 17, 2022, the Commonwealth filed in its Omnibus Pretrial Motion a notice of intent to admit evidence of Harris' January 27, 2022 workplace assault of Pickens, pursuant to Pa.R.E. 404(b)(2). *See* Commonwealth's Omnibus Pretrial Motion, 10/17/23, at 2-3. That same day, Harris filed a motion *in limine* to exclude the eight-minute portion of the BB&S parking lot surveillance video showing Pickens crawling toward the main street and attempting to stand up. *See* Defendant's Omnibus Pretrial Motion, 10/17/23, at 10. On February 17, 2023, the court denied Harris' motion to exclude the challenged portion of video and permitted the Commonwealth to publish to the jury the entirety of the surveillance footage. *See* Order, 2/17/23. Further, the court permitted the Commonwealth's to introduce evidence of Harris' prior assault of Pickens. ***See id.***

On April 20, 2023, the jury convicted Harris of the above-mentioned crimes. *See* N.T. Jury Trial, 4/20/23, at 80. On June 1, 2023, the trial court sentenced Harris to a mandatory term of life imprisonment without the possibility of parole. Harris filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Harris raises the following issues for our review:

> 1. Did the trial court err in admitting inflammatory video evidence which depicts [Pickens] seriously injured and struggling to stand?

2. Did the trial court err in admitting improper character and propensity evidence regarding a prior alter[c]ation between [Harris] and [Pickens].

Appellant's Brief, at 6.

In his first issue, Harris argues that the trial court abused its discretion in admitting the eight-minute portion[4] of surveillance video that depicts Pickens right after the stabbing, and prior to being struck by the vehicle—the portion of surveillance video showing Pickens' failed attempts to get up and walk. **See** Appellant's Brief, at 9. Specifically, Harris argues that, under **Commonwealth v. Johnson**, 42 A.3d 1017 (Pa. 2012), admission of the challenged eight-minute portion of video evidence is improper because it is (1) highly inflammatory and (2) is not "of such essential evidentiary value that [its] need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." Appellant's Brief, at 10, citing **Johnson**, 42 A.3d at 1033-34.

Harris argues that the video evidence is inflammatory because it "stands to reason" that the video of Pickens, as Detective Jackson described it, "fighting for his life," N.T. Jury Trial, 4/18/23, at 77, is more inflammatory than audio recording evidence taken from an emergency 911 call of a man also dying, which this Court, in **Commonwealth v. Loughnane**, 128 A.3d 806 (Pa. Super. 2015), found to "run a very high risk of inflaming the passions of the jury." Appellant's Brief, at 11, citing **Loughnane**, 128 A.3d at 818, **rev'd**, 173 A.3d 733 (Pa. 2017) (reversing on other grounds).

_____

[4] Harris only challenges the admission of this specific eight-minute portion of the video.

Further, Harris argues that the evidentiary value of the challenged eight-minute portion of surveillance footage is not so essential as to clearly outweigh the danger of inflaming the jury for four reasons. **See** Appellant's Brief, at 12. First, Harris argues the challenged portion of video does little to establish the perpetrator's intent because it only shows the victim alone, and does not show the stabbing, neither does it show Pickens being subsequently run over by a vehicle. **Id.** Second, Harris claims that any evidentiary value that the challenged portion of video may have in showing the perpetrator's intent is outweighed by its prejudicial effect because it presents cumulative evidence. **Id.** at 13. Specifically, Harris contends that the expert testimony of Erica Williams, M.D., who was qualified at trial as an expert in forensic pathology, is sufficient to establish the element of specific intent that would be necessary to sustain a murder conviction because Dr. Williams' testimony described a total of 28 cuts and wounds inflicted on Pickens' neck and head, 46 cuts to his body, and multiple bone fractures that he sustained in the deadly attack. **See id.**, citing N.T. Jury Trial, 4/19/23, at 78, 79, 91. This testimony, Harris argues, alone, satisfies proof of intent because intent may be inferred from the use of a deadly weapon to a vital part of the body. **See** Appellant's Brief, at 14, citing **Commonwealth v. Ramtahal**, 33 A.3d 602, 607 (Pa. 2011). Third, Harris claims that, contrary to the trial court's findings, the eight-minute portion of video could not have been relevant to negate a defense of self-defense because Harris did not put forth any such defense. **See** Appellant's Brief, at 14. Fourth, Harris argues that, contrary to the trial court's conclusion,

the video footage does not serve as the best evidence to explain Pickens'

movements in reference to the blood evidence found in the BB&S parking lot.

*See id.* Rather, Harris claims, the existing photographic evidence and

Detective Jackson's testimony serve as the best evidence of the blood

spattering found there. *Id.* at 14-15, citing, N.T. Jury Trial, 4/18/23, at 77-

78.

"[D]ecisions on admissibility [of evidence] are within the sound

discretion of the trial court and will not be overturned absent an abuse of

discretion or misapplication of law." *Commonwealth v. Talley*, 236 A.3d

42, 55 (Pa. Super. 2020). Further,

> [a]n abuse of discretion is not merely an error of judgment, but[,]
> if in reaching a conclusion[,] the law is overridden or misapplied,
> or the judgment exercised is manifestly unreasonable, or the
> result of partiality, prejudice, bias[,] or ill-will, as shown by the
> evidence or the record, discretion is abused.

*Id.*; *see also Commonwealth v. Garcia*, 280 A.3d 1019, 1023-24 (Pa.

2022) ("An appellant cannot meet this burden by simply persuading an

appellate court that it may have reached a different conclusion than that

reached by the trial court.") (citation omitted).

For an evidentiary ruling to constitute reversible error, the error must

have been harmful or prejudicial to the complaining party. *See Talley*,

*supra*. Prejudice in this context occurs when "the trial court's error could

have affected the verdict." *Commonwealth v. Rashid*, 160 A.3d 838, 846

(Pa. Super. 2017).

Further, all relevant evidence is assumed admissible, unless otherwise provided by law. *See* Pa.R.E. 402; *Commonwealth v. Yale*, 249 A.3d 1001, 1022 (Pa. 2021); *see also Commonwealth v. Minerd*, 753 A.2d 225, 230 (Pa. 2000) (relevant evidence "logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact") (citation and quotation marks omitted). However, relevant evidence may be excluded if "its probative value is outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. In this context, the exclusion of relevant evidence is limited to when it is "so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Owens*, 929 A.2d 1187, 1191 (Pa. Super. 2007), quoting *Commonwealth v. Broaster*, 863 A.2d 588, 592 (Pa. Super. 2004). In determining the admissibility of allegedly prejudicial evidence under Rule 403, it is well established that the court applies a two-step analysis: (1) the court must determine whether the evidence is indeed inflammatory, and, (2) if the evidence is inflammatory, the court must determine whether "it is of such evidentiary value that its need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." *Commonwealth v. Wallace*, 244 A.3d 1261, 1269-70 (Pa. Super. 2021).

Video evidence is inflammatory if it is unnecessarily gruesome. *See* *Commonwealth v. Wright*, 961 A.2d 119, 139 (Pa. 2008) (photographs of homicide scene were not inflammatory because evidence only showed "limited" amounts of dried blood and were not "unnecessarily gruesome"); *Commonwealth v. Malloy*, 856 A.2d 767, 777 (Pa. 2004) (photographs of victim's headshot wounds were not inflammatory where not "unnecessarily gruesome"); *Commonwealth v. Funk*, 29 A.3d 28, 33 (Pa. Super. 2011) (en banc) ("This Court has interpreted inflammatory to mean the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant.").

In *Commonwealth v. Patterson*, 91 A.3d 55 (Pa. 2014), our Supreme Court reviewed a six-minute portion of video surveillance, which depicted the victim's body at the murder scene, the victim's headshot wound, and a trail of blood coming from the wound. *See id.* at 68. Our Supreme Court concluded the six-minute portion of video was not inflammatory because the evidence was dark and grainy, the images of blood and gore lasted just a few seconds, and the camera panned around, thus negating a danger of unnecessary goriness. *Id.* The Court further found the video highly relevant because it corroborated testimony and was relevant to the Commonwealth's assertion that the defendant planned the attack and lured the victim. *Id.* Moreover, the video "assisted the jury's understanding of the facts." *Id.*

In *Johnson*, *supra*, our Supreme Court held that eighteen inflammatory photographs of the victim's injuries were, nonetheless,

- 9 -

admissible due to their essential evidentiary value. *See Johnson*, 42 A.3d at 1034. The Court reasoned that the photos supplemented limited testimony, were necessary to show the nature of the injuries the victim sustained, and were only shown to the jury during the trial and not during deliberations. *See id.* at 1034-35; *see also Commonwealth v. Rush*, 646 A.2d 557, 560 (Pa. 1994) ("[E]ven where the body's condition can be described through testimony from a medical examiner, such testimony does not obviate the admissibility of photographs.").

As it relates to Harris' claims regarding cumulative evidence, our Supreme Court has previously explained that "cumulative evidence is additional evidence that supports a fact established by the existing evidence." *Commonwealth v. Small*, 189 A.3d 961, 973 (Pa. 2018). However, "evidence is not cumulative if it is of a different character and of a separate and distinct fact." *Id.* (citation and quotation marks omitted); *see also id.* ("Whether evidence is cumulative depends not only on whether it tends to establish the same fact, but [also] . . . whether the new evidence is of the same or different grade.") (citation omitted).

In *Commonwealth v. Woodard*, 129 A.3d 480 (Pa. 2015), our Supreme Court found that thirteen color autopsy photos, depicting the victim's injuries, and a black and white photo of the victim's lacerated liver, were not cumulative of expert testimony describing the injuries. *See id.* at 494-95, citing *Commonwealth v. Watkins*, 108 A.3d 692, 724 (Pa. 2014) ("[T]he mere fact that a medical examiner testified to the nature of the victim's

injuries and the cause of death does not render photographs of the victim duplicative."); *see also Commonwealth v. Shelton*, 170 A.3d 549, 550-51 (Pa. Super. 2017) (finding victim's recorded fifteen-minute forensic interview not cumulative because it reported events more fully than trial testimony, which displayed lack of recollection as to events in question).

As to the trial court's finding that the surveillance footage serves as the best evidence of the blood spattering found in the BB&S parking lot, we have observed that the best evidence rule is "applicable only in circumstances where the contents of the writing, recording[,] or photograph are integral to proving the central issue in a trial." *Commonwealth v. Fisher*, 764 A.2d 82, 88 (Pa. Super. 2000). Under Pennsylvania Rule of Evidence 1002, known as the "best evidence rule," "[a]n original writing, recording, or photograph is required in order to prove its contents." Pa.R.E. 1002; *see also Commonwealth v. Green*, 162 A.3d 509, 518 (Pa. Super. 2017) ("the rule applies if the writing, recording, or photograph is necessary to prove the elements of a case.").

In *Green*, we considered the best evidence rule in the context of surveillance footage. *See Green*, 162 A.3d at 518. There, the defendant was convicted of one count of theft relating to missing bank deposits. *See id.* at 515. At trial, the Commonwealth sought to admit testimony describing the contents of surveillance footage taken at the bank, which was specifically offered to prove the defendant failed to make necessary deposits as part of his job at the bank. *See id.* at 513-14. Contrary to the defendant's argument,

- 11 -

our Court found the best evidence rule did not apply to the bank surveillance footage. *See id.* at 522. Although the defendant's nonappearance in the footage was relevant to the Commonwealth's case, such nonappearance was "mere evidence of the Appellant's complete failure to make the required disposition of the funds" making the best evidence rule more "attenuated." *Id.*

In denying Harris' motion *in limine*, the trial court reasoned that, although the eight-minute portion of video was indeed "very inflammatory," it was the best evidence to demonstrate both the legal elements necessary to establish the murder charge and to corroborate testimony describing the blood spattering in the parking lot. *See* Trial Court Opinion, 11/13/23, at 15-16. The trial court found that, though inflammatory and violent, the video was not gory and therefore did not run the risk of causing "the jury to make a decision based on something other than the legal propositions relevant to the case." *Id.* at 16, quoting *Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015) (citation omitted).

Upon our review, we conclude the eight-minute portion of the surveillance video presented by the Commonwealth was not inflammatory, but even if it were inflammatory, it was nevertheless admissible because of its essential evidentiary value. *See Johnson*, *supra*.

Preliminarily, we observe that Harris does not cite to any legal authority or other record support for the proposition that it "stands to reason that visual evidence poses a greater risk than sounds." *See* Appellant's Brief, at 11.

Further, contrary to Harris' claims, *Loughnane*, does not stand for the proposition that visual evidence is more susceptible to inflaming the minds and passions of a jury than audio evidence. Rather, in that case, this Court merely weighed the evidentiary value of the evidence in question against its likelihood of inflaming the minds of the jury, concluding that the latter outweighed the former. *See Loughnane*, 128 A.3d at 818, citing *Johnson*, 42 A.3d at 1034.

Regardless, as to Harris' claim that the challenged video is inflammatory, we conclude that Harris' case is governed by *Patterson*, *supra*, where the Court determined that footage depicting the crime scene, including the victim's body, was not inflammatory. *See Patterson*, 91 A.3d at 68. Here, although surely upsetting,[5] the eight-minute portion of surveillance footage is not inflammatory because it was recorded at night, has low-quality grainy resolution, and does not contain any visible blood or gore. *See Patterson*, *supra*; *Wright*, *supra*; *Malloy*, *supra*; *see also* Trial Exhibit "CW-7," at 04:16 – 12:14. Further, because the video evidence was relevant to proving Harris' intent—an element of first-degree murder—the video "assisted the jury's understanding of the facts." *Patterson*, 91 A.3d at 68; *see also* Pa.R.E. 401; Pa.R.E. 402. Also, in our view, the limited use of

_____

[5] We have long held that "the trial court need not sanitize the record of all negative inferences against a defendant." *Commonwealth v. Lang*, 275 A.3d 1072, 1085, quoting *Commonwealth v. Talbert*, 129 A.3d at 539 (internal quotation omitted). (already cited above).

this portion of the footage at trial, namely its use only in testimony and not during jury deliberations, did not "cloud the jury's objective assessment of the guilt or innocence of the defendant." **Funk**, 29 A.3d at 33; **see also Johnson**, 42 A.3d at 1034. Consequently, Harris has failed to establish that the challenged evidence is inflammatory under Rule 404(b).

Even if the challenged portion of the video were inflammatory, we would find that the instant case is governed by the result in **Johnson**, where our Supreme Court concluded that inflammatory evidence was properly admitted because it was of such essential evidentiary value to clearly outweigh the danger of inflaming the jury. **See Johnson**, 42 A.3d at 1034. Similar to **Johnson**, here, the surveillance footage supplemented Detective Jackson's limited trial testimony describing the scene of the crime and the same surveillance footage. **See** N.T. Jury Trial, 4/18/23, at 75-77, 83. The video also helped to more fully explain Dr. Williams' testimony regarding the condition of Pickens' body, specifically the scrapes and bruises she observed, by showing how Pickens' injuries were sustained. **See** N.T. Jury Trial, 4/19/23, at 91. Accordingly, we find the challenged portion of video is relevant and admissible insofar as it "assisted the jury's understanding of the facts" and showed Harris' specific intent to kill. **See Patterson**, **supra**.

Relatedly, we disagree with Harris' argument, that the evidence should be excluded because it was cumulative of "other evidence which was sufficient to establish intent," namely Dr. Williams' testimony. Appellant's Brief, at 13; **see also Woodard**, **supra**; **Watkins**, **supra**; **Rush**, **supra**; **Shelton**,

*supra*. To the contrary, the surveillance footage is neither cumulative of the crime scene photographs nor of Dr. Williams' testimony because the video more fully shows Harris' intent in retrieving his vehicle and striking Pickens with it twice, a full eight minutes after stabbing Pickens forty-six times. *See Small*, *supra*. Further, the evidence provided an explanation for the patterns of blood found at the crime scene and provided valuable evidence showing whether Harris knew Pickens was alive at the time he ran him over twice and then "loaded" Pickens into the vehicle. *Id.*; *see also* Trial Exhibit "CW-7," at 04:16 – 12:14; N.T. Jury Trial, 4/18/23, at 80. Like in *Shelton* where the trial court found testimony to be limited, the photographs and expert testimony by themselves, merely show, enumerate, and/or describe the resultant stab wounds, thus providing the jury with only a limited view of Harris' intent. *See Shelton*, *supra*. Indeed, the witness testimony and other evidence only proved the condition of the victim and the scene of the crime **after** the incident concluded, whereas the surveillance footage shows **how** the crime took place and **how** the scene came to be prior to the incident's conclusion. *See Small, supra*. Consequently, we conclude the challenged video evidence is not cumulative of the witness testimony or photographs because that other evidence is of a different grade or character, was presented to the jury in different media formats, and relates to separate and distinct facts. *Id.*

Because we find that the challenged portion of video evidence was relevant, not needlessly cumulative, and ultimately admissible, we need not

address Harris' third argument, that the evidence was not otherwise admissible to negate a defense of self-defense.

As to Harris' fourth contention, which concerns the best evidence rule, we disagree with the trial court that it was required to admit the challenged video evidence pursuant to that rule. We are constrained to conclude that the best evidence rule does not apply here because the challenged video was not "necessary[6] to prov[ing] any element" of the crimes charged. **Green**, **supra**; **see also Fisher**, **supra**. Indeed, the jury heard other evidence from which it could conclude that the perpetrator acted with the requisite specific intent because the jury heard testimony describing the nature of the wounds inflicted upon Pickens, including expert testimony that severe wounds were inflicted by deadly weapons to vital parts of Pickens' body. **See Ramtahal**, **supra**; **see also Green**, **supra**.

Although we conclude that the best evidence rule does not apply, we, nonetheless, find that the trial court did not abuse its discretion when it admitted that challenged portion of the surveillance video at trial because that evidence is not cumulative because it is of a different grade and character, and was admissible to show how Pickens' injuries were inflicted and how the scene of the crime came to be. **See Patterson**, **supra**; **Johnson**, **supra**; **Woodard**, **supra**; **Watkins**, **supra**; **Rush**, **supra**, **Shelton**, **supra**.

_____

[6] Although not necessary, the challenged portion of the video is relevant and admissible.

Accordingly, we discern no abuse of discretion and Harris is not entitled to any relief on his first issue. ***See Talley***, ***supra***.

In his second issue on appeal, Harris argues the trial court erred in admitting evidence of his prior bad acts concerning his fight with Pickens on January 27, 2022. ***See*** Appellant's Brief, at 16. Harris claims the Commonwealth's use of this prior bad acts evidence is improper under Rule 404(b) because it is not relevant to establish either Harris' motive or intent because there was not a "sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts or circumstances." Appellant's Brief, at 17, quoting ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1283 (Pa. Super. 2004). Harris relies on a line of our Supreme Court's cases in an attempt to show that Pickens' murder, which occurred two months after the January 27, 2022 fight, was too remote in time to be considered caused by the prior facts or circumstances. ***See*** Appellant's Brief, at 18, citing ***Commonwealth v. Hairston***, 84 A.3d 657 (Pa. 2014) (two weeks elapsed between victim's murder and defendant's trial for rape of victim) ***Commonwealth v. Dowling***, 883 A.2d 570 (Pa. 2005) (two days elapsed between defendant's trial for victim's robbery and attempted rape and victim's murder ), and ***Commonwealth v. Flori***, 150 A. 290 (Pa. 1930) (victim's murder occurred one day before commencement of trial against defendant for robbery of victim). Additionally, Harris argues that the trial court should have provided a cautionary instruction to the jury when admitting the evidence of the prior altercation to overcome any prejudice and

to minimize the risk of inflaming the juror's minds or passions as well as the risk of the verdict being improperly based. **See** Appellant's Brief, at 18, citing **Commonwealth v. Sherwood**, 982 A.2d 483, 497-98 (Pa. 2009).

Evidence of prior acts, wrongs, or crimes is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character or trait" but may be used for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(1)-(2). Further, in a criminal case, such evidence is admissible only if "the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

To admit prior bad acts evidence to show motive or intent for a killing under Rule 404(b)(2), the prior act must "give sufficient grounds for believing the crime at trial grew out of the prior facts and circumstances, or the prior facts and circumstances caused the crime at trial." **Commonwealth v. Bidwell**, 195 A.3d 610, 620 (Pa. Super. 2018). Further, a prior altercation may be admitted to show motive, even if "the prior act is somewhat remote in time." **Commonwealth v. Eddowes**, 580 A.2d 769, 775 (Pa. Super. 1990); **see id.** (evidence of violent fight occurring between defendant and victim six months prior to murder relevant to show motive); **see also Commonwealth v. Weakley**, 972 A.2d 1182, 1189-90 (Pa. Super. 2009) (importance of temporal nexus between crimes declines as similarity of crimes increases). Lastly, our Supreme Court has explained that "evidence

- 18 -

concerning the relationship between the defendant and the victim may be relevant and admissible to prove ill[-]will, malice, or motive." *Commonwealth v. Stallworth*, 781 A.2d 110, 119 (Pa. 2001); *see also Funk*, *supra* at 34.

In *Stallworth*, our Supreme Court found the admission of trial testimony was not an abuse of discretion where the testimony further demonstrated the nature of the relationship between the defendant and the victim. *See id.* at 118. In that case, the Court found it was not an abuse of discretion to admit the testimony of eight eyewitnesses who described their observations of the defendant's earlier threats directed toward the victim. *See id.* at 119. Further, the Court found that the relationship, marked by threats conditioned on the victim initiating child support payments, showed motive to kill where the murder occurred three weeks after the victim filed for child support. *See id.*

In the instant matter, the trial court found the prior altercation between Harris and Pickens was admissible to prove motive and intent under Rule 404(b)(2). *See* Trial Court Opinion, 11/13/23, at 20. Further, the trial court found the probative value of the challenged testimony outweighed any danger of unfair prejudice because it "was a pivotal piece of evidence that connected [Harris] to the crime." *Id.*

Upon our review, we agree with the trial court that the evidence of the prior altercation between Harris and Pickens was admissible under Rule 404(b)(2) to show motive and intent. By merely distinguishing the case at

bar from a line of cases all involving shorter periods of time between the relevant acts, Harris fails to convince us that the altercation is not admissible for the purpose of establishing motive and intent, where there were sufficient grounds for believing the crime at trial grew out of the prior facts and circumstances. *See Bidwell*, *supra*.

We agree with the trial court that the evidence was admissible to establish Harris' motive and intent because the prior altercation demonstrates the violent relationship between Harris and Pickens. *See Stallworth*, *supra*; *Eddowes*, *supra*; *Funk*, *supra* at 34; *see also* N.T. Jury Tral, 4/18/23, at 123. Further, evidence of the prior altercation makes it more probable that the subsequent murder grew out of that fight because of the proximity in location of the altercation and the murder, the fact that the altercation was physically violent, and the fact that Harris' employment was terminated directly because of the altercation, whereas Pickens retained his employment. *See* N.T. Jury Trial, 4/18/23, at 123; *Bidwell*, *supra*. We further conclude that the two months that elapsed between the altercation and the instantly charged murder did not render the altercation too remote from the murder such that it vitiates the altercation's relevance to proving Harris' motive and intent in the instant case. *See Weakley*, *supra*; *Eddowes*, *supra*.

Because we conclude that the testimony regarding the altercation between Harris and Pickens is admissible to prove Harris' motive and intent—non-propensity purposes—the ultimate admissibility of this challenged testimony rests upon whether the "the probative value of the evidence

outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). We find that it does. Specifically, we find the challenged testimony tended to establish both motive and intent, and any possible prejudicial effect was minimal given that presentation of the prior bad act evidence to the jury was limited to Elshani's testimony in the context of describing the nature of Harris and Pickens' prior existing relationship and how Harris was fired from his employment, where he was previously a coworker with Pickens. *See id.*

To the extent that Harris argues he was entitled to a cautionary instruction informing the jury of the limited purpose for which the jury could consider the prior bad act evidence, we note that Harris never asked the trial court for such a cautionary instruction. Therefore, the issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *see also Johnson*, 42 A.3d at 1026 n.5; *Commonwealth v. Wallace*, 561 A.2d 719, 725 (Pa. 1989) (failure to object when trial court did not issue cautionary instruction following introduction of challenged evidence resulted in waiver of any claim of error based upon trial court's failure to give cautionary instruction); *Commonwealth v. Storey*, 167 A.3d 750, 758 (Pa. Super. 2017) ("Failure to request a cautionary instruction upon the introduction of evidence constitutes a waiver of a claim of trial court error in failing to issue a cautionary instruction."). Further, Harris did not include the issue in his court-ordered Rule 1925(b) statement and, thus, this issue is additionally waived for that reason. *See* Apellant's Brief, at 6; Pa.R.A.P. 1925(b)(4)(vii); *see also*

***Commonwealth v. Edwards***, 874 A.2d 1192, 1196 (Pa. Super. 2005) ("the failure to include an issue in a Rule 1925 statement renders that issue waived on appeal."). Accordingly, we discern no abuse of discretion and Harris is not entitled to any relief on his second issue. ***See Talley***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/12/2024